

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-8-2005

# Allen v. Comm Social Security

Precedential or Non-Precedential: Precedential

Docket No. 04-2163

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Allen v. Comm Social Security" (2005). *2005 Decisions.* Paper 623.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/623

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

NO. 04-2163

———

WILLIAM D. ALLEN,
                    Appellant

v.

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-02597)
District Judge:  Hon. Dennis M. Cavanaugh

———

Argued March 8, 2005

Before: NYGAARD, McKEE, and RENDELL,
Circuit Judges

(Filed  August 8, 2005)

Abraham S. Alter [ARGUED]
Langton & Alter
2096 St. Georges Avenue
P. O. Box 1798
Rahway, NJ   07065

*Counsel for Appellant*
*William D. Allen*


Anthony J. LaBruna, Jr.
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ  07102

Karen T. Callahan [ARGUED]
Social Security Administration
Office of General Counsel - Region II
26 Federal Plaza
New York, NY    10278

*Counsel for Appellee*
*Commissioner of Social Security*

OPINION OF THE COURT

RENDELL, <u>Circuit Judge</u>

William Allen complains of the determination of the Social Security Administration ("Agency") that Allen is capable of substantial gainful employment. Allen was awarded social security benefits in 1994 based on his manic-depressive disorder, and schizoid condition. These benefits were discontinued in 1998 based on the Agency's determination that Allen's condition had improved. Allen appealed this decision and the Appeals Council remanded the decision, specifically requiring, among other things, that "if warranted by the expanded record" the Administrative Law Judge ("ALJ") "obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base..." Allen urges that the ruling of the ALJ on remand denying his continued benefits was not supported by substantial evidence because the ALJ relied on the medical-vocational grids notwithstanding the fact that the impairment from which he suffers was not exertional. Allen urges that the Commissioner was required to come forward with testimony from a vocational expert regarding the occupational base in light of the nature of Allen's limitations.

The District Court affirmed the determination of the Agency that Allen's condition had improved, reasoning that "...because the findings and opinions of Plaintiff's treating, examining and non-examining sources confirm that Plaintiff's condition improved to where he could perform substantial

3

gainful activity, Plaintiff failed to show that his medical impairment resulted in functional limitations that precluded all successful gainful activity." The District Court also held that reliance on the grids, as well as on Social Security Rulings, was sufficient in order for the Commissioner to satisfy its burden of proof and the ALJ had discretion whether or not to call a vocational expert. While we agree generally with the District Court's ruling that the Commissioner can satisfy his burden in this manner, we disagree with the way in which the ALJ applied the Social Security Ruling at issue here, and we will reverse the District Court's Order and remand for it to refer the matter to the Agency for further findings.[1]

We review the Agency's factual findings only to determine whether the administrative record contains substantial evidence supporting the findings. See 42 U.S.C. § 405(g); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). We exercise plenary review over all legal issues. See Id.

---

[1] This is an appeal from a final order of the United States District Court for the District of New Jersey denying Allen's claim for continuation of Social Security disability benefits. The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction pursuant to 28 U.S.C. § 1291.

4

**BACKGROUND**

Allen's grant of benefits came up for periodic continuing disability review in October 1997, pursuant to Sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, at which time the issues were whether his medical condition had improved, and whether he had the ability to obtain gainful employment. See 20 C.F.R. § 416.994 (2005).

When benefits were originally awarded to him in 1994, Allen had completed a Functional Assessment Questionnaire, in which he indicated that he lived with his mother, needed help taking care of his personal needs, and did not prepare his own meals. He indicated that on some days he did not get out of bed. His mother did the shopping, and he barely left the house. He stated, "I think I'm God, so I waste money." Further, with respect to his interests and recreational activities, he noted that all he did was to "sleep and fantasize," and that he didn't visit others because "I don't trust humans." Asked to elaborate on his medical condition, he wrote: "Sometimes I think the world is coming to an end, that I'm God, that I'm the devil and that I'm the richest man in the world. I also think the TV is talking to me."

At that time, Dr. Edward Tabbanor opined that Allen had a 15-year history of emotional difficulties, and that although he was on medication and "is pleased with his

5

present adjustment . . . he is functioning marginally and is involved in no organized activities. He should be encouraged to seek the services of vocational rehabilitation." Dr. Tabbanor concluded that Allen was "not a good candidate" for gainful employment.

The Agency terminated Allen's benefits in January 1998, based on its own determination that, as of November 1997, he had the ability to engage in substantial gainful employment. Reconsideration of the denial was denied, but Allen then requested a hearing before an ALJ, which was held in May 1999, at which he appeared and testified.

The ALJ considered the applicable standard, namely, that he needed to determine whether there had been a decrease in the medical severity based on changes in symptoms, signs, and/or laboratory findings manifested by the impairment, noting that the medical improvement must be related to ability to work. If there was a medical improvement and an increase in the individual's functional capacity to do basic work activities, the ALJ noted, he would determine that medical improvement related to the ability to do work has occurred. 20 C.F.R. § 1594(b)(3).

The ALJ cited extensive improvement in Allen's condition, giving appropriate details as to specific areas of improvement, and describing the 1997 findings of two physicians, Edward Tabbanor and Luis Zeiguer. The ALJ

6

concluded, in summary fashion, that based on the evidence, "the claimant has the residual functional capacity to perform substantial gainful activity, including his past relevant work as a salesperson." The ALJ then concluded that the benefits had been correctly terminated.

On appeal, the Appeals Council took the ALJ to task for failing to include (1) an evaluation of the severity of Allen's mental impairment or effects pursuant to 20 C.F.R. § 404.1520(a); (2) an evaluation of the credibility of Allen's subjective complaints as required by Social Security Ruling 96-7(p) and 20 C.F.R. § 404.1529; and (3) an indication of Allen's exertional or nonexertional limitations. The Appeals Council stated that it was unable to determine "how the decision has been reached that the claimant retains the residual functional capacity to perform his past relevant work."

The Appeals Council then remanded Allen's case to the ALJ, instructing the ALJ to further evaluate the claimant's subjective complaints, evaluate his mental impairment in accordance with the technique described in 20 C.F.R. § 404.1520a(c), consider the maximum residual functional capacity, and "if warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 85-15)." The Appeals Council included the following in concluding its directive: "The

7

hypothetical questions should reflect the specific category/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy. (20 C.F.R. § 404.1566)."

A hearing was held on August 13, 2001, at which Allen appeared and testified. Allen testified that he had completed college and had taken some graduate courses. He had held a few jobs, as a draftsman, a salesperson, and a telemarketer, but was fired from every job within three months. He was on medication, and took public transportation to get to the doctor's office and to the hearing. He testified that he had a "short fuse" and sometimes co-workers would make him angry. Working in a workplace setting was difficult when he experienced manic episodes and he missed work because of lack of sleep.

The record before the ALJ included assessments from three doctors. Dr. Robles, who had treated Allen in 1999 at the Newark Beth Israel Medical Center, noted that Allen's bipolar disorder made him "likely to decompensate if under pressure or with large groups of people." Dr. Tabbanor, who had rendered an opinion when Allen first qualified for benefits, opined that Allen was "compliant with medical supervision and lithium medication with fair results. He presents as a fair candidate for resumption of gainful

8

employment." Dr. Zeiguer noted that Allen explained that he has not sustained full-time employment because "under stress of employment production demands he tends to develop paranoid ideation and gets into conflicts." The opinion then went on to note the potential for stress-related decompensation, although experiencing very limited psychiatric hospitalization and concluded that Allen "showed good enough concentration for simple repetitive chores."

The ALJ issued his opinion on November 29, 2001, referencing the opinions of Drs. Tabbanor and Zeiguer, and noted that the Beth Israel psychiatric records indicated that "the claimant was doing well and his condition had stabilized. The ALJ did not refer to the "decompensation" note contained in Dr. Robles' report. The ALJ found Allen's symptoms to be not fully supported by objective medical evidence alone, and his allegations that he was unable to work after November 1, 1997 because of his mental impairments to be not fully credible.

The ALJ then noted that Allen's impairment was "severe," but not of listing severity. He then followed the dictates of 20 C.F.R. §§ 404.1520(a) and 416.920(a), examining Allen's Residual Functional Capacity, noting that Allen had "mild" limitations in his activities of daily living and concentration, "moderate" limitations of social functioning (which decrease when he takes his medication), and that he had not experienced episodes of decompensation.

9

The ALJ concluded that Allen had made medical improvement in the symptoms of bipolar disorder.  This was based primarily upon Dr. Tabbanor's opinion in 1997 (as compared to his first opinion, in 1994).  Drawing on Dr. Tabbanor's opinion that "claimant was capable of gainful employment," and Dr. Zeiguer's opinion that claimant was "capable of performing simple chores," the ALJ concluded that Allen had the Residual Functional Capacity for simple routine repetitive work at all exertional levels.  However, he was not capable of his past relevant work, as a salesman, because it was classified as "semi-skilled," and claimant was no longer capable of performing semi-skilled work.

Stating that the Commissioner had the burden of showing that significant jobs existed in the local or national economy that claimant was capable of performing, given his medically determinable impairments, and functional limitations, the ALJ then concluded:

The claimant has a college education and a semi-skilled work background.  The claimant is capable of performing a full range of unskilled work at all exertional levels.  A finding of not disabled was reached by application of medical-vocational rule 204, Appendix 2, subpart P, Regulations Part 404, used as a framework for decision making.  The mental limitations for simple, routine, repetitive work do not significantly erode the base of jobs that claimant is capable of performing.  (SSR 85-15 )

10

Accordingly, in reaching the ultimate conclusion regarding the availability of jobs in the economy that Allen is capable of performing, the ALJ relied on SSR 85-15 without requiring testimony from a vocational expert.

On appeal, the District Court affirmed the ALJ's decision, finding substantial evidence in the record to support the ALJ's findings that Allen's condition had medically improved since November 1, 1997, that this medical improvement was related to Allen's ability to work and that Allen had the Residual Functional Capacity to perform simple, repetitive work at all exertion levels. Thus, the District Court held that the ALJ was correct to conclude that although Allen could not likely return to his past relevant work, there existed other jobs in the national economy at the sedentary level that Allen could perform. The District Court further held that the ALJ did not have to consult a vocational expert in order to make his determinations as to whether Allen was able to perform basic mental work-related functions, as the decision whether the consult such an expert was within the discretion of the ALJ. The District Court noted that the ALJ "distinctively noted that based on Social Security Ruling 85-15, he found that Plaintiff's mental limitations did not significantly erode the base of unskilled work available. This Court may defer to the SSR since there exists no evidence in the record, nor allegations by Plaintiff, to establish that SSR 85-15 is plainly erroneous or inconsistent with the Act and 'once published, [SSRs] are binding on all components of the

11

[Social Security Act].' Walton v. Halter, 243 F.3d 703, 708 (3d Cir. 2001)."

## **DISCUSSION**

On appeal, Allen challenges the ALJ's reliance on the medical-vocational grids when presented with nonexertional impairments. Allen contends that the ALJ's ruling runs contrary to our opinion in Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000), in which we stated:

> The Commissioner cannot determine that nonexertional impairments do not significantly erode occupational base under medical-vocational guidelines ("grids") without taking additional vocational evidence establishing that fact.

Sykes at 261.

Allen posits that in Sykes, we specifically forbade the ALJ from "invoking the dubious 'framework' exception by considering himself or herself to be a vocational expert." Allen contends, in addition, that the ALJ's decision violates the Agency's own rulings and regulations.

While Allen's argument has an initial appeal, because the grid's "framework" clearly classifies work in terms of strength, thus tying it to physical exertion, nonetheless, as we

12

discuss below, the Agency has used, and the courts are thus
directed to employ, the grids as a framework when
nonexertional limitations are also at issue. Here we are
presented with <u>exclusively</u> nonexertional limitations by virtue
of Allen's mental diagnosis. Accordingly, we must
determine whether the grids still are an appropriate
framework and whether if nonexertional limitations are
present, a vocational expert must be called by the
Commissioner in order for it to meet its burden at the
5th step.[2]

---

[2] As the Court noted in <u>Sykes v. Apfel</u>, 228 F.3d 259, 262-63
(3d Cir. 2000):

> The Social Security Administration has
> promulgated a five-step process for evaluating
> disability claims. <u>See</u> 20 C.F.R. § 404.1520
> (1999). First, the Commissioner considers
> whether the claimant is currently engaged in
> substantial gainful activity. If he is not, then the
> Commissioner considers in the second step
> whether the claimant has a 'severe impairment'
> that significantly limits his physical or mental
> ability to perform basic work activities. If the
> claimant suffers a severe impairment, the third
> inquiry is whether, based on the medical
> evidence, the impairment meets the criteria of an
> impairment listed in the 'listing of impairments,'
> 20 C.F.R. pt. 404, subpt. P, app. 1 (1999), which
> result in a presumption of disability, or whether

Here, the ALJ relied on the regulations as a "framework," and then relied on Social Security Ruling ("SSR") 85-15 in reaching his ultimate conclusion that Allen could engage in substantial gainful employment.[3]   Allen

the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work.  If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.  The claimant bears the burden of proof for steps one, two, and four of this test.  The Commissioner bears the burden of proof for the last step. (Internal citations omitted).

[3] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." Sullivan v. Zebley, 493 U.S. 521, 531 n.9 (1990) (Internal quotations omitted). "...Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same. A ruling may be superseded, modified, or revoked by later legislation, regulations, court decisions or rulings." Heckler v. Edwards, 465 U.S. 870, 874 n.3 (1984) (Internal quotations

14

contends that only a vocational expert could make that last link, and that relying on an Agency ruling does not satisfy the Agency's burden.

The issue before us, then, in the broadest sense, requires an inquiry into the role that Social Security Rulings play in Agency determinations, and, more specifically, whether, here, reference to the specific Ruling was an appropriate substitute for the testimony of a vocational expert.[4]

We start our analysis with the Supreme Court's opinion in <u>Heckler v. Campell</u>, 461 U.S. 458 (1983), in which the Supreme Court clearly established the general rule that the Agency may rely on rulemaking authority to determine issues

---

omitted).

[4] We note at the outset that although Allen contends that the remand order directed the use of a vocational expert, we do not read the order as mandatory in this regard. Rather, the remand order states that the ALJ will: "If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 85-15). . . ." Thus, it was up to the ALJ on remand to determine whether a vocational expert was necessary. The Appeals Council, in affirming the ALJ after its more recent ruling did not question the ALJ's reliance on the Social Security ruling rather than on a vocational expert.

15

that do not require case-by-case consideration. In that case, a challenge was leveled at the medical-vocational guidelines themselves, with Campbell arguing that the ALJ had the obligation to examine specific types of work in order to determine whether she could obtain substantial gainful employment when presented with the issue as to what jobs she could perform, given her back condition, which permitted her to do only light work. The ALJ rejected that argument, and relied on the medical-vocational guidelines in his finding that a significant number of jobs existed that someone in her condition could perform. The Court of Appeals for the Second Circuit reversed, holding that the Secretary must engage in individualized scrutiny of her limitations and possible relevant jobs, and must identify "specific alternative occupations available in the national economy that would be suitable for the claimant." 461 U.S. at 464.

The Supreme Court rejected the Court of Appeals' view, noting that after the ALJ makes the assessment as to the claimant's individual abilities, he must then determine whether jobs exist that a person having claimant's qualifications could perform. With respect to that second inquiry, the Court noted:

> The second inquiry requires the Secretary to determine an issue that is not unique to each claimant – the types and number of jobs that exist in the national economy. This type of

16

> general factual issue may be resolved as fairly through rulemaking as by introducing the testimony of vocational experts at each disability hearing.

Id. at 467-68.

Thus, Heckler stands for the broad proposition that the Commissioner can satisfy its burden of proof regarding availability of jobs in the national economy via rulemaking rather than requiring actual evidence on a case-by-case basis.[5] Thus, Agency rulemaking, as long as it is not arbitrary or capricious, is permissible as a substitute for individualized case-by-case determinations, thus doing away with the need

---

[5] Campbell had raised an issue regarding due process and the requirement of notice of reliance on rulemaking, but the court declined to address it, since Campbell had not previously raised this claim and the Court did not view it as an exceptional case where issues not raised should nonetheless be addressed on appeal. In alluding to the issue, however, the Court noted the principle of administrative law, "that when an agency takes official or administrative notice of facts, a litigant must be given an adequate opportunity to respond." Such an opportunity to respond would appear to require notice to the claimant of the agency's intent. Thus, the Court left open the possibility that an ALJ's reliance exclusively on rulemaking without notice might be viewed as unfair to the claimant. See Heckler v. Campbell, 461 U.S. 458, 469 n.13 (1983).

17

for evidence to support the determination at Step 5.

In Walton v. Halter, 243 F.3d 703 (3d Cir. 2001), we had occasion to examine the extent to which the Agency's rules and regulations are binding on the Agency. There, the Commissioner reached a conclusion with respect to the onset date of the claimant's disease based upon medical evidence which was not clearly dispositive. We concluded that the ALJ could not, consistent with SSR 83-20 and the necessity of establishing "an onset date based on substantial evidence," simply "draw an inference from the record evidence [that lacked] medical support." Id. at 709. In other words, because SSR 83-20 required a medical basis for the ALJ's conclusion, the ALJ's determination that ran afoul of the ruling was not supported by substantial evidence. In this way, we required adherence to the SSRs, finding them to be controlling.

More recently, in 2000, our Court had occasion to consider the application of these directives in the context of a different fact pattern, namely, one that involved nonexertional as well as exertional limitations. In Sykes v. Apfel, Sykes had a number of severe impairments, including left eye blindness. The ALJ in Sykes relied on the medical-vocational guidelines as a "framework" and, on review, we concluded:

> [U]nder Heckler v. Campbell . . . , and in the absence of the rulemaking establishing the facts of an undiminished occupational base, the

18

Commissioner cannot determine that a
claimant's nonexertional impairments do not
significantly erode his occupational base under
the medical-vocational guidelines without either
taking additional vocational evidence
establishing as much or providing notice to the
claimant of his intention to take official notice
of this fact (and providing the claimant with an
opportunity to counter the conclusion).

228 F.3d 259, 261 (3d Cir. 2000).

In Sykes, the ALJ had denied Sykes' application,
summarily concluding that the exclusion of jobs requiring
binocular vision from light work positions did not
significantly compromise Sykes' broad occupational base.
We disagreed, and concluded that either vocational evidence
or "rulemaking establishing the fact of an undiminished
occupational base" was necessary. Id. at 261.

Allen contends that the ALJ's ruling here, and thus the
District Court's as well, is contrary to Sykes.   However,
whereas Sykes spoke to the situation in which rulemaking
regarding the degree of diminution in the occupational base
was lacking, here the ALJ specifically referred to rule
SSR 85-15.   SSR 85-15 addresses the precise issue presented
here, namely, the interplay between nonexertional
impairments and the grids, which we will discuss more fully

19

below.

After the Sykes opinion, the Agency issued an Acquiescence Ruling to specifically address how the Agency would deal with issues of this kind in cases within the geographic limits of the Third Circuit.   There, the Agency noted that, thereafter, at Step 5, the Agency would not use the grid framework exclusively when there were nonexertional limitations, but would, in addition:

(1)  Take or produce vocational evidence, such as from a vocational expert, the DOT, or other similar evidence (such as a learned treatise); or

(2)  Provide notice that we intend to take or are taking administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational base, and allow the claimant the opportunity to respond before we deny the claim.

However, the Agency then went on to specifically state:

This Ruling does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim

20

being adjudicated affects the claimant's occupational job base. When we rely on such an SSR to support our finding that jobs exist in the national economy that the claimant can do, we will include a citation to the SSR in our determination or decision.[6]

AR 01-1(3), 2001 WL 65745 at *4 (S.S.A.).

Accordingly, the ALJ's use of the guidelines as a framework in this case, and his reliance upon an SSR at Step 5 to determine Allen's occupational job base is not an improper application of either the case law or rules established by the Agency. Further, from the standpoint of common sense, the grids' use for exertion level are not totally irrelevant if a claimant has only a nonexertional impairment, for there would still be an applicable exertional level, i.e., the claimant could do work requiring heavy exertion.

However, the ALJ's reliance on SSR 85-15 in this instance, and in summary fashion, gives us pause. While the Agency excerpted a certain portion of SSR 85-15 as

---

[6] Interestingly, the Agency then noted as well: "We are considering revising our rules regarding our use of the grid rules as a framework for decision making and may rescind this Ruling once we have made the revision." AR 01-1(3), 2001 WL 65745 at *5 (S.S.A.). No revision has occurred to date.

21

conclusive on the relationship between the type and degree of mental limitation and the size of the occupational base, nonetheless, the ALJ's conclusion in this regard fails to focus on any of Allen's work-related limitations. Instead, the ALJ's opinion parrots the attributes of work, not the limitations experienced by Allen, noting that Allen was capable of performing "a full range of unskilled work at all exertional levels" but then stating, as the complete mental impairment analysis, the following: "The mental limitations for simple, routine, repetitive work do not significantly erode the base of jobs the claimant is capable of performing. (SSR 85-15.)"

The difficulty we have with this reasoning is that the Appeals Council in its remand order specifically admonished the ALJ to state the claimant's exertional and nonexertional limitations. Instead, the ALJ refers to SSR 85-15 as though it resolves the issue. However, SSR 85-15 is a ten-page ruling that specifically addresses the relationship of different mental impairments to job activity.

SSR 85-15 provides that where individuals have nonexertional limitations of function or environmental restrictions, the table rules (medical-vocational rules) still provide a "framework" for consideration of how much the individual's work capability is further diminished in terms of any types of jobs. Where a person has solely a nonexertional impairment: "[T]he table rules do not direct conclusions of disabled or not disabled. Conclusions must, instead, be based

22

on the principles in the appropriate sections of the regulations..." The Ruling then notes that its purpose is to clarify policies applicable in cases involving the evaluation of <u>solely</u> nonexertional impairments. 1985 WL 56857 at *1 (S.S.A.).

The policy statement of SSR 85-15 notes that the first issue to be considered is the Residual Functional Capacity reflecting the severity of the particular nonexertional impairment with its limiting effects on the broad world of work. <u>Id</u>. at *2. The SSR makes clear that, while there may be a need to consult a vocational resource, "the publications listed in Sections 404.1566 and 416.966 of the Regulations will be sufficient vocational resources for relatively simple issues. In more complex cases, a person or persons with specialized knowledge would be helpful." <u>Id</u>.at *3.

Within the discussion of mental impairments in the Ruling are several examples of different attributes of individuals which would, or would not, limit the occupational base for jobs in the national economy. The Ruling contains a general discussion that merits repeating:

> Given no medically determinable impairment which limits exertion, the first issue is how much the person's occupational base – the entire exertional span  from sedentary work through heavy (or very heavy) work – is

23

reduced by the effects of the nonexertional impairment(s). This may range from very little to very much, depending upon the nature and extent of the impairment(s). In many cases a decision maker would need to consult a vocational resource.

Id.

The SSR then proceeds to address certain examples of nonexertional impairments, commenting on their impact on the occupational base. In introducing the topic of "mental impairments," it states: "The decision maker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work. This decision requires careful consideration of the assessment of RFC." Id. at *4. The SSR also includes a discussion of the impact of the inability to handle stress, and addresses how an individual with a difficult reaction to the demands of work may have difficulty meeting the requirements of even a low-stress job. Further, it notes that the reaction to stress is highly individualized. The section ends with the notation that any impairment-related limitations created by an individual's response to demands of the workplace must be reflected in the RFC assessment. Id. at *5-6.

Notwithstanding the ALJ's reference to, and apparent reliance on, this Ruling, we are at a loss to find within the

24

Ruling itself the conclusion the ALJ seems to find regarding the occupational base for one with Allen's mental limitations.

The ALJ makes broad statements regarding Allen's RFC, as we referenced above, but his conclusion only addresses in general fashion the "mental limitations for simple, routine, repetitive work." It does not reference any aspect of SSR 85-15 that relates Allen's particular nonexertional limitations to the occupational job base.  Thus, we have difficulty in determining what the ALJ believed were Allen's "mental limitations for simple, routine, repetitive work," and how they fit into the various categories or examples set forth in SSR 85-15.   While, surely, the Agency can use its rules as a substitute for individualized determination, nonetheless, there must be a "fit" between the facts of a given case, namely, the specific nonexertional impairments, and the way in which the Rule dictates that such nonexertional limitations impact the base.  In fact, the Acquiescence Ruling states that a ruling that is being relied upon in lieu of testimony should set forth the "fit." <u>See</u> 2001 WL 65745 at *4 (stating that the requirement that the Agency consider vocational expert testimony or provide notice that it is taking administrative notice of the fact that a particular nonexertional limitation does not significantly erode the job base when making a disability determination as to a nonexertional impairment at Step 5 of the sequential process would not be necessary if the "SSR includes a statement explaining how the particular nonexertional limitation(s)

25

under consideration... affects the claimant's occupational base"). SSR 85-15 refers specifically to aspects of nonexertional limitation apparent in Allen's profile, as the doctors' reports indicate, namely, difficult response to supervision, impaired ability to deal with changes in a work setting and job stress. The Rule states, in concluding the discussion of this type of limitation:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. For example, a busboy need only clear dishes from tables. But an individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the knowledge that one's work is being judges and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons. Any impairment-related

26

limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

1985 WL 56857 at * 6.

The RFC assessment here fails to really focus on the limitations at issue. Moreover, the ALJ made only passing reference to the nature of Allen's limitations, stating that "the record shows an opinion that pressure or being in large groups of people could aggravate his symptoms." However, the ALJ then discarded this fact by noting that Allen could travel on his own and did not relate either of these factors as specifically problematic. In fact, Allen did express concern as to the social interaction and stress of jobs. The ALJ did not connect these limitations to any applicable occupational base directives within SSR 85-15. While, admittedly, SSR 85-15 does include specific statements explaining how specific nonexertional limitations would affect the claimant's occupational base, it also includes certain areas of concern that should require the ALJ to make an individualized determination. These would appear to be present here.

Looking at the ALJ's conclusory reference to SSR 85-15, we cannot determine whether he was relying upon a specific aspect of the Rule in a permissible way, or whether, by contrast, he found certain limitations to exist which would require, under the dictates of the Rule itself, an individualized

determination. Looking at the record before us, we cannot help but note that certain aspects of Allen's mental disorder – including response to supervision, stress, and the like – would more likely be subjected to an individualized assessment.

In reviewing proceedings before ALJs, we have been careful to ensure that a vocational expert's hypothetical contain a complete and accurate factual basis in order for the conclusion to constitute substantial evidence. See Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004). Just as we required in Ramirez that a vocational expert's testimony was only as valid as the limitations that the ALJ had included in the hypothetical, here we will require that the ALJ's own reference to the SSR ruling discuss specifically the limitations presented by the medical record. As we said in Ramirez, "If, however, an ALJ poses a hypothetical question to a vocational expert that fails to reflect 'all of the claimant's impairments that are supported by the record . . . it cannot be considered substantial evidence.'" Id. at 550 (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)).

Recently, in Burns v. Burnhart, 312 F.3d 113 (3d Cir. 2002), where the vocational expert's testimony did not touch on borderline intellectual functioning, and the ALJ used only the concept of "simple repetitive one-, two-step tasks" in the hypothetical, we could not conclude that its ruling was supported by substantial evidence because the reference to simple tasks did not "specifically convey" the claimant's

28

intellectual limitations and that "greater specificity" was required.

Accordingly, we hold that if the Secretary wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base. Here, notwithstanding the fact that stress was alluded to by one of the doctors, and that stress is singled out as an individualized factor in the SSR relied upon, the ALJ fails to discuss this and, as a result, his determination that Allen has the ability to perform simple tasks prevalent in the national economy is not supported by substantial evidence.

Accordingly, we will vacate and remand for further elaboration by the ALJ regarding how the specific limitations experienced by Allen would impact his ability to perform simple repetitive tasks in a job that constitutes substantial gainful employment. This can be accomplished by noting how SSR 85-15 is relevant and controlling – if indeed that is the case – or by obtaining the individualized assessment that SSR 85-15 seems to prefer by way of a vocational expert.

We also take this opportunity to address the issue of notice, alluded to but not decided by the Supreme Court in Heckler, See supra note 5, and required in some situations by the Acquiescence Ruling referred to above. If an agency will

29

rely on rules as a substitute for individualized determination, and thus relieve the agency from the burden of producing evidence, we think advance notice should be given. In the Acquiescence Ruling, however, the Agency excepted out those instances where the reliance would be placed on an SSR that includes a statement explaining how the limitation did affect the occupational job base. 2001 WL 65745 at *4. We question whether this exception is called for and urge that, as a matter of fairness, alerting a claimant to the relevant rule in advance will always be appropriate. While the Agency can meet its burden by reference to a Ruling, as the Supreme Court has held, nonetheless, the claimant should have the opportunity to consider whether it wishes to attempt to undercut the Commissioner's proffer by calling claimant's own expert. Obviously, this requires notice in advance of the hearing.

We think it only appropriate to give close scrutiny to the ALJ's reliance on a Ruling as satisfying the Commissioner's burden at Step 5 where the Commissioner has not previously advised or argued the clear applicability of the Ruling in advance of the hearing. In this way, while the Commissioner has the ability to satisfy its burden in this way, its doing so does not constitute an ambush whereby the claimant, who assumed he would have the opportunity to cross-examine a vocational expert, is left as a practical matter to merely argue against a Ruling in response to the Commissioner's proof.

30

## CONCLUSION

In light of the foregoing, we will reverse the District Court's Order and remand for it to refer the matter to the Agency for further findings consistent with this opinion.