

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-15-2006

# Hernandez v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4275

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Hernandez v. Comm Social Security" (2006). *2006 Decisions.* Paper 451.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/451

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

NO. 05-4275

———

KATHLEEN HERNANDEZ,
                                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 04-cv-01926)
District Judge: Hon. Stanley R. Chesler

———

Submitted Under Third Circuit LAR 34.1(a)
September 14, 2006

Before: SLOVITER, WEIS, and GARTH, Circuit Judges

(Filed September 15, 2006)

———

OPINION

SLOVITER, Circuit Judge.

## Introduction

Kathleen Hernandez appeals from the decision of the District Court affirming the final decision of the Commissioner of Social Security that Hernandez was not entitled to disability insurance benefits under the Social Security Act. Because the District Court thoroughly reviewed the record, we will not repeat its analysis in its entirety, choosing instead to focus only on the highlights.

## I.

Hernandez filed an application for disability insurance benefits on October 19, 1994, alleging disability since September 16, 1993 when she sustained injuries to her head, neck, left shoulder and arm in a motor vehicle accident. The application was denied initially and on reconsideration. Following a hearing, the Administrative Law Judge ("ALJ") found that Hernandez was not disabled. There followed a series of procedural steps, including an appeal, remand, a second hearing before an ALJ, who also found that Hernandez was not disabled, additional procedures and finally yet another hearing before a new ALJ, who evaluated the evidence pursuant to the five-step sequence set forth in 20 C.F.R. § 404.1520, and who concluded Hernandez was not disabled. The Appeals Council denied Hernandez's request for review, making the ALJ's May 30, 2003 decision the final decision of the Commissioner.

Hernandez filed an action in the United States District Court for the District of

2

New Jersey challenging the Commissioner's final decision. The District Court affirmed and Hernandez appeals.

## II.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of legal issues in reviewing an appeal from the district court affirming the Commissioner's denial of Social Security benefits, but review factual findings to determine whether the administrative record provides substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).

The Social Security Administration has promulgated a five-step sequential evaluation process to determine whether an individual is disabled. See 20 C.F.R. § 404.1520; Plummer v Apfel, 186 F.3d 422, 428 (3d Cir. 1999). The parties agree that Hernandez satisfies step one because Hernandez did not engage in substantial gainful activity for the period at issue, September 16, 1993 through June 30, 1999 when Hernandez's disability insurance benefits expired. 20 C.F.R. § 404.1520(a). In step two, the Commissioner determines whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). The Commissioner found that the herniated discs of Hernandez's cervical spine constituted a "severe" impairment within the meaning of the Regulations, but that she did not establish a severe mental impairment, gastritis, or spastic colon. In step three, the Commissioner evaluates whether the evidence establishes

that the claimant suffers from a listed impairment. If so, the claimant is automatically eligible for benefits. If the claimant does not suffer from a listed impairment or its equivalent, however, the Commissioner proceeds to the next step. 20 C.F.R. § 404.1520(d). Although the Commissioner found that Hernandez's cervical spine injuries were severe, he found they were not severe enough to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").

In step four, the Commissioner reviews whether the claimant retains the "residual functional capacity" to perform his or her past relevant work. If so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(e). The Commissioner found and the ALJ agreed that Hernandez retained the residual functional capacity to perform sedentary work that did not require frequent lifting with the left, non-dominant arm. See 20 C.F.R. § 404.1567(a). Finally, in step five the Commissioner considers whether work exists in significant numbers in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and "residual function capacity." If so, the claimant is not eligible for benefits. 20 C.F.R. § 404.1520(f). In this final step, "the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability." Plummer, 186 F.3d at 428. The ALJ agreed that Hernandez could not perform her past relevant work as a food handler or assembly line worker, but that, using the Medical-Vocational Guidelines Rule 201.27, Hernandez could perform the

4

jobs of parts inspector, parts sorter, parts cleaner and coil inspector.

On appeal, Hernandez argues that the ALJ and District Court erred in their findings with respect to steps two, three, four and five of the sequential analysis. As part of her argument, Hernandez alleges that the ALJ omitted evidence, distorted testimony, and was motivated by "unmistakable bias." Appellant's Br. at 3. The Government responds by arguing that each of the ALJ's findings were supported by substantial evidence and that Hernandez's ad hominem attacks on the ALJ are unwarranted.

**III.**

Under the applicable regulations, an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic mental work activities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). A claimant's symptoms, defined as her own description of the impairment, are not alone sufficient to establish a mental impairment. 20 C.F.R. § 404.1528(a). Instead, psychiatric signs are indicated, as provided in the version of the Regulations applicable in this proceeding, by "medically demonstrable phenomena which indicate specific abnormalities of behavior, affect, thought, orientation, and contact with reality." 20 C.F.R. § 404.1528(b).

In finding that Hernandez did not have a severe mental impairment, the ALJ

discussed the regulatory provisions governing his decision as well as the evaluations of Drs. Latimer, Fischer, and Makhija. The ALJ noted that while Dr. Latimer described Hernandez as severely depressed at his initial evaluation in April 1994, the only medications prescribed as of September 1994 were Zantac and Lomotil, which treat gastrointestinal disorders. These findings are supported by the record. He also explained that there was no evidence that Hernandez sought the care of a mental health professional aside from her few visits to Dr. Latimer in 1994. Specifically, Dr. Latimer only saw Hernandez on April 4, 11, 18, and 28, 1994.

In addition, the ALJ mentioned that Drs. Latimer and Fischer described Hernandez as "pleasant," a term that he did not find was generally associated with individuals suffering from major depression. He also noted that Drs. Latimer and Makhija documented fully intact orientation and alertness, and normal memory, concentration, attention span, judgment and insight. These findings are also supported by the record. Furthermore, he mentioned that neither doctor found psychotic trends, delusions, obsessive-compulsive behaviors, looseness of associations or flights of ideas. Likewise, the record supports these findings. Because there was no objective chronicling of any concentration/cognitive disturbance, the ALJ gave little weight to Dr. Makhija's findings of psychomotor retardation and withdrawn appearance, Dr. Latimer's conclusion of permanent and total disability, or state agency psychological consultants finding moderate restrictions.

He concluded by finding that, while Hernandez had a depressive disorder and post-traumatic stress disorder, they resulted in no more than slight limitations in daily living, social functioning, concentration, persistence, and pace. Therefore, he found that the evidence did not substantiate a severe mental impairment.

Despite the fact that these findings are supported by the record, Hernandez argues at length that the ALJ simply should not have discredited the conclusions of all these reports. However, the observations contained within these reports do not explicitly indicate how Hernandez would be unable to perform work activities because of any mental impairment that may be present. Although Dr. Latimer's report concluded that Hernandez was disabled, the ALJ determined this conclusion to be unsupported, noting that Hernandez only received treatment on four occasions, that she was only prescribed gastrointestinal medications, that the body of the report did not support the conclusion, and that Dr. Latimer had a history of consistently declaring claimants to be disabled regardless of his objective findings. The ALJ also stated that, while Dr. Makhija's report found psychomotor retardation, nothing indicated that Hernandez's mental impairment prevented her from doing basic work activities.

We will not disturb the District Court's holding that approved the ALJ's finding that Hernandez failed to prove her mental impairment to be severe.

**IV.**

Hernandez next argues that her cervical disc impairment is the medical equivalent

of Section 1.04 of the Listings and therefore entitled to presumptive disability.

Hernandez bears the burden of presenting medical findings showing that her impairment meets or equals a listed impairment.  Burnett, 220 F.3d at 120 n.2.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

> Section 1.04 requires:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root . . . or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting or supine); or
>
> B. Spinal arachnoiditis . . . or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Hernandez argues that her condition satisfies the Listings if she merely establishes "pain, spasm, limitation of motion, sensory and reflex loss," Appellant's Br. at 26, and she appears only to be arguing that she fits within the description of "A," nerve root compression.  She does not, however, direct the court to any report or other evidence specifically indicating nerve root compression as characterized by motor or sensory loss,

nor has any such evidence been found in a review of the record. It follows that the ALJ's finding that Hernandez did not meet the requirements of the Listings is supported by substantial evidence.

Hernandez further argues that the ALJ failed in his duty to fully explain this finding. Hernandez cites Burnett v. Commissioner, 220 F.3d 113, 120 (3d Cir. 2000), for his argument that "the ALJ must recite evidence which contradicts his finding and explain the basis for its rejection as well as explain[] the evidentiary basis for each finding at each level of the sequential evaluation." Appellant's Br. at 25. However, in Burnett, we only held that a bare conclusory statement by the ALJ that an impairment did not match the Listings was insufficient for us to conduct a meaningful review. Burnett, 220 F.3d at 119–20.

Hernandez complains that at this step the ALJ merely stated that "there is no documentation of any nerve root compression as characterized by motor or sensory loss, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, as required by medical listings 1.04A, B and C, pertaining to spinal disorders." Tr. 303. However, if the ALJ found no documentation of these signs, there is nothing more he could have discussed. In fact, the ALJ thoroughly discussed the medical evidence relating to Hernandez's cervical spine injuries later in his opinion, and went to great length in explaining the weight given to each medical report and his reason for rejecting some of the evidence.

Therefore, his opinion as a whole indicates that the ALJ considered the appropriate evidence and factors in determining that Hernandez's impairment did not meet the requirements for any listing. The ALJ satisfied the Burnett requirement of sufficient explanation of the step three determination.

## V.

Hernandez again asserts that the ALJ offered insufficient explanation for his residual function capacity determination and argues that the ALJ was too optimistic in his findings regarding her ability to move her neck. However, in his thorough explanation of the medical evidence that he rejected the ALJ explained why he did not accept Hernandez's neck movement complaints, citing the cervical range of motion findings of Dr. Qualter and physical therapist Abood-Bruno. Therefore the ALJ provided substantial evidence and sufficient explanation for his findings regarding Hernandez's neck.

## VI.

Hernandez also argues that the ALJ's finding that there are jobs in the economy that she can perform is not supported by substantial evidence. Because the ALJ determined that some of Hernandez's impairments prevented her from doing the full range of sedentary work, he consulted a vocational expert to determine if there were jobs that she could perform based upon her age, education, work experience, and residual function capacity. The vocational expert considered these factors and determined that Hernandez could perform the jobs of parts inspector, parts sorter, video monitor, coil

10

inspector, components inspector and parts cleaner. The expert also testified that such jobs existed in sufficient numbers in the regional economy.

The ALJ's discussion of medical reports, reasons why many were rejected, and the vocational expert's testimony provide more than "a mere scintilla" of evidence supporting the ALJ's decision. Plummer, 186 F.3d at 427. There was substantial evidence for the ALJ's determination as to step five and his conclusion that Hernandez is not disabled.

## VII.

We note our displeasure with the conclusory and unprofessional assertions that pervade Hernandez's brief. We have previously reprimanded this counsel for his "pejorative and unfounded arguments. They ill serve his client and adversely affect his credibility." Neal v. Comm'r, 57 Fed. Appx. 976, 978 n.2 (3d Cir. 2003). That comment is equally appropriate in the present case.

## VIII.

For the reasons discussed above, we will affirm the District Court's conclusion that there was substantial evidence to support the ALJ's decision.

11