

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-2007

# Meyler v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4280

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Meyler v. Comm Social Security" (2007). *2007 Decisions.* Paper 534.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/534

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4280
_____

PATRICIA MEYLER,
                              Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 04-cv-05
4669)
Chief District Judge: Garrett E. Brown, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
on July 10, 2007

Before:  RENDELL and AMBRO, Circuit Judges
and SHAPIRO,* District Judge.

(Filed August 28, 2007)

_____

OPINION OF THE COURT
_____

_____

    *  Honorable Norma L. Shapiro, Senior Judge of the United States District Court for
    the Eastern District of Pennsylvania, sitting by designation.

SHAPIRO, <u>District Judge</u>.

Patricia Meyler seeks review of the denial by the Commissioner of Social Security ("Commissioner") of her application for Supplemental Security Income ("SSI"). Meyler appeals the final order of the Commissioner on three grounds: (1) the Administrative Law Judge ("ALJ") failed to articulate an evidentiary basis for his finding that Meyler's mental impairments did not meet or equal a listed impairment; (2) the ALJ violated due process by failing to subpoena Meyler's treating physician; and (3) the ALJ erred in concluding Meyler could perform jobs existing in the national economy by relying exclusively on Social Security Rulings without providing her notice of his intent to do so. We will reverse and remand this matter for further findings.

I.

Meyler filed her application for SSI payments on September 6, 2001, and claimed a disability onset date of January 1, 1996. The application was denied initially and upon reconsideration. Meyler requested *de novo* review by an administrative law judge. At a hearing on February 27, 2003, Meyler agreed to an alleged disability onset date of September 6, 2001, because an earlier date would reopen Meyler's prior cessation case. After the hearing, the ALJ denied Meyler's application.[1]

---

[1]Meyler avers that a subsequent SSI application was granted and she has been receiving SSI payments since April 2004. Therefore, the current action only concerns SSI payments from September 6, 2001, until April 2004.

Meyler was born on August 10, 1952. On the date of the ALJ's decision, she was 50 years old and had a high school education. In her SSI application, Meyler claimed she had arthritis in her legs, numbness in her hands and fingers, and severe asthma. (Administrative Record at 92.) ("A.R. 92") She reported she had mental problems when in the presence of other people, and felt paranoid when people stared and talked about her. (A.R. 87, 91-92.) Her daily activities included going to the store or staying in bed; sometimes she anxiously paced in circles. (A.R. 84.) Meyler also reported that she: left the house three times a week; went food shopping; visited a friend a few times a month; washed the floor; and did laundry every one or two weeks. (A.R. 84-88.) She claimed she required help with these activities because she got confused and did not feel comfortable leaving the house. (A.R. 85-86.)

The record before the ALJ contained reports from five examining physicians. Dr. Cincotta found Meyler had a history of polysubstance abuse and complaints of swollen hands and feet; but he opined her "examination was within normal limits" with no wrist or ankle swelling. (A.R. 118.) Dr. Agarwal, Meyler's treating physician, recorded no abnormalities in Meyler's extremities.

Dr. Coblentz of Irving Counseling Center, where Meyler had attended counseling sessions since October 22, 2001, found Meyler reported symptoms of depression with panic attacks, and observed that Meyler had an abrasive whining voice consistent with depression. He stated Meyler's speech was logical, coherent, and relevant, with no breaks

in reality contact, no unusual thought trends, and no indication of paranoia. Though Meyler appeared depressed, she was not particularly anxious, her memory appeared intact, and her sensorium was clear. Dr. Coblentz diagnosed Meyler with a condition between dysthymic disorder and major depressive disorder, and panic disorder with agoraphobia. Meyler was initially prescribed 20 milligrams of Prozac daily. After subsequent meetings, Dr. Coblentz noted Meyler was jittery and increased her daily dosage of Prozac to 40 milligrams; he also prescribed 50 milligrams of Trazadone to help Meyler sleep. Dr. Coblentz later reported that Meyler was obsessing because her daughter had been hospitalized for depression. Meyler's voice was "particularly grating and annoying with a real undercurrent of self pity"; she complained of anorexia and stated she did not leave her room. (A.R. 149.) Dr. Coblentz discontinued Trazadone, continued her Prozac, and started her on Seroquel, an anti-psychotic with a sedative side effect, and Remeron, to improve her sleep and appetite.

Dr. Zeiguer conducted an in-person examination of Meyler and diagnosed her with panic disorder triggered by exposure to crowds, with occasional panic attacks at home, a history of hepatitis C, and a reported history of multiple joint pains, bronchial asthma, and fatigue. He noted Meyler was competent to handle SSI benefits, but could benefit from psychiatric treatment. Dr. Block interviewed Meyler and observed that she trembled and kept her eyes closed during the meeting. He found evidence of anxiety and psychomotor agitation, but did not find evidence of depression or obsessive-compulsive

4

ideation or behavior. Dr. Block diagnosed Meyler with major depression and anxiety disorder, but found her competent to handle her own funds.

The record does not contain a report from Dr. Sharma, one of Meyler's treating physicians. Meyler testified that she saw Dr. Sharma every two months for several years, and that he prescribed her asthma medication and Celebrex. Meyler's paralegal representative at the ALJ hearing, Mary Lou Lynch ("Lynch"), testified she could not obtain a report from Dr. Sharma because he was on vacation, and someone from Dr. Sharma's office told her there was not much in Meyler's record. The ALJ sent two letters to Dr. Sharma to obtain Meyler's treatment records, but received no response.

Meyler testified that she filed for SSI because she had trouble understanding and following directions. She stated she experienced panic attacks five times a week and approximately 75 percent of the time she spent outside her home. During these panic attacks, Meyler felt lost and her entire left side went numb. Meyler reported panic near other people, and did not like going out to do laundry without her friend Edward Henneberry. She testified she felt short of breath after walking one block because of her asthma, and she had bad arthritis in her legs, right hand and arm, and left foot. Meyler stated that in the past she used heroin, but she had not used street drugs in years. She reported she spent her days cleaning the kitchen and bathroom, cooking hamburgers and hot dogs, and watching television five hours a day. Meyler did not leave the house every day, but she took public transportation if she could not get a ride. She stated she did not

5

have difficulty sitting, could lift and carry five pounds, and could perform simple jobs such as packing or counting items. She took the medications Wellbutrin, Prozac, Seroquel, Celebrex, and liquid Methadone for her ailments.

Meyler's friend of 22 years, Henneberry, testified that on one shopping trip with Meyler she got lost for approximately eight minutes, and he found her crying in the corridor. According to Henneberry, Meyler was nervous and could not stay still, and became nervous around other people. He stated Meyler could cook, select and pay for food, and count money. He acknowledged Meyler could hold a job involving packing items into a box, but she would not be able to count the items she packed or keep track of dates or times.

The ALJ denied Meyler SSI because her subjective assertions of functional impairments were inconsistent with objective medical reports. He also noted inconsistencies among Meyler's reports regarding her daily activities and drug use. He found Meyler did not have any physical or exertional impairment, since Dr. Cincotta reported no evidence of wrist or ankle swelling and Dr. Agarwal's treatment records reflected no abnormalities in Meyler's extremities. He found Meyler's depression and anxiety were severe mental impairments, but did not meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulations Part 404 ("Listing of Impairments"), because they resulted in only slight limitations in daily living, social functioning, and concentration, and they were relatively well controlled with medication.

6

The ALJ decided Meyler had no past relevant work experience and considered whether Meyler could perform any work. He found Meyler had the residual functional capacity to perform simple duties at all exertional levels because: her disorders were "relatively well controlled upon medication"; she had not been hospitalized for her mental impairments; and her activities of daily living indicated that she was not incapacitated. (A.R. 20-21.) His opinion explained that under Social Security Ruling ("SSR") 85-15, 1985 WL 56857 (S.S.A.), "where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work." (A.R. 20.) The ALJ explained that such jobs ordinarily involve working with objects rather than with data and people. He also found that under SSR 83-10, 1983 WL 31251 (S.S.A.), the occupational base considered in each medical-vocational rule consisted of the unskilled occupations identified at the exertional level in question. Using medical-vocational rule 204.00 (20 C.F.R. Pt. 404, Subpt. P, App. 2) as a framework, without relying upon a vocational expert, the ALJ found Meyler had the residual functional capacity to perform jobs existing in the national economy.

The Appeals Council found no grounds for review, and the District Court affirmed the Commissioner's decision. Meyler has appealed.[2] The District Court had jurisdiction

---

[2]We note with displeasure that, once again, Meyler's counsel, Abraham S. Alter, Esq., has failed to meet the Court's expectation that counsel "exercise appropriate professional behavior in all briefs." L.A.R. 28.1(c). Counsel has previously been admonished in *Orriols v. Commissioner of Social Security*, 2007 WL 1211653 at *5 n.4 (3d Cir. Apr. 25, 2007), *Hernandez v. Commissioner of Social Security*, 198 Fed.Appx. 230, 236 (3d Cir.

over this matter pursuant to 42 U.S.C. § 405(g). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review the Commissioner's factual findings to determine whether they are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is relevant evidence that a reasoning mind might find adequate to support a conclusion. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). We exercise plenary review over the legal issues. *Sykes*, 228 F.3d at 262.

In order to receive SSI payments, a claimant must be disabled. An ALJ considers a claimant's disability under a five-step evaluation. 20 C.F.R. § 404.1520 (2005). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity"; if so, the claimant's application for disability benefits is automatically denied. *Id*. § 404.1520(a)(4)(i). If the claimant is not employed, the ALJ determines whether the claimant has a "severe impairment" or "combination of impairments."

---

2006), *Neal v. Commissioner of Social Security*, 57 Fed.Appx. 976, 978 n.2 (3d Cir. 2003), and, most recently, in *Frazier v. Commissioner of Social Security*, 2007 WL 1991574 at *1 n.1 (3d Cir. July 11, 2007). We ordered counsel's original brief stricken and a new brief filed without *ad hominem* attacks on the ALJ. The new brief is not much improved over the original as it continues to make disrespectful, unwarranted allegations against the ALJ. We are obliged to advise counsel that his lack of professionalism harms the interest of his client and adversely affects his credibility. Counsel must cease this unprofessional conduct or be subject to sanctions.

*Id*. § 404.1520(a)(4)(ii). A claimant who does not have a "severe impairment" is not disabled. *Id*. If the impairment is found "severe," the ALJ determines whether the impairment meets or is equal to those impairments in the Listing of Impairments. *Id*. § 404.1520(a)(4)(iii). If so, the claimant is presumed disabled, and the evaluation ends. *Id*.; 20 C.F.R. § 404.1520(d).

If the impairment does not meet or equal a listed requirement, the ALJ determines the claimant's residual functional capacity ("RFC") and past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant is capable of performing her previous work, she is not disabled. *Id*. If the claimant cannot perform her prior work, the evaluation continues to the last step. This requires determination of whether the claimant is capable of performing other work available in the national economy. *Id*. § 404.1520(a)(4)(v). The ALJ must consider the claimant's RFC, together with her age, education, and past work experience. *Id.* § 404.1520(g). The claimant bears the burden on the first four steps; if the sequential analysis reaches the fifth step, the burden of proof shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

III.

Meyler argues the ALJ failed to articulate an evidentiary basis for his finding that Meyler's mental impairments did not meet or equal a listed impairment. The ALJ identified listings 12.04 (affective disorders), 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04, and 12.06 (anxiety-related disorders), 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06, as

relevant to Meyler's impairments, but found these impairments were not severe enough to meet those listings. An impairment meets listing 12.04 when the criteria in paragraphs A and B are satisfied, or when the criteria in paragraph C are satisfied. *Id*. § 12.04. An impairment meets listing 12.06 when the criteria in both A and B are satisfied, or when the criteria in both B and C are satisfied. *Id*.

Paragraph B criteria of listings 12.04 and 12.06 require at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id*. §§ 12.04(B), 12.06(B). Paragraph C of listing 12.04 requires demonstration of one of the following: (1) repeated and extended episodes of decompensation; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *Id*. § 12.04(C)(1)-(3). Paragraph C of listing 12.06 requires that the disorder result in "complete inability to function independently outside the area of one's home." *Id*. § 12.06(C).

The ALJ found that, when performing simple tasks, Meyler's conditions "result in no more than slight limitations in activities of daily living, social functioning, and

10

maintaining concentration, persistence and pace." (A.R. 19.) He found no evidence of mental decompensation. He referred to the reports of Dr. Zeiguer and Dr. Block, which show "full orientation and alertness, adequate concentration and memory, and intact judgment and insight." *Id*. Meyler, who bears the burden of proof at this step, failed to articulate why her impairments met or equalled the relevant listings. After a review of the record, the Court finds substantial evidence supported the ALJ's decision.

IV.

Meyler argues the ALJ violated due process by failing to subpoena her treating physician, Dr. Sharma. Any hearing afforded a Social Security disability claimant must be full and fair. *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). This standard is violated if a claimant is deprived of the opportunity to present evidence to an ALJ in support of her claim, or if the ALJ exhibits bias against the claimant. *See id*. at 902; *Hess v. Secretary of Health, Educ. and Welfare*, 497 F.2d 837, 841 (3d Cir. 1974). Under 20 C.F.R. § 416.1450(d)(1), when it is reasonably necessary, an ALJ or member of the Appeals Council may, on his or her own initiative or at the request of a party, issue a subpoena for the appearance or testimony of a witness and for the production of records material to an issue or hearing.

At the ALJ hearing, Meyler's representative, Lynch, explained that she was unable to obtain a medical report from Dr. Sharma, but did not request a subpoena. On March 3, 2003, the ALJ sent a letter to Dr. Sharma requesting Meyler's treatment records. After

11

receiving no response, he sent a second letter to Dr. Sharma on March 21, 2003. When the ALJ received no response by April 16, 2003, he closed the record without issuing a subpoena for the treatment records. The ALJ's actions were not inappropriate: he was not required to issue a subpoena for records under 20 C.F.R. § 416.1450(d)(1), and Lynch did not ask him to do so. The record before the ALJ already contained reports on Meyler's physical condition from Dr. Cincotta and Dr. Agarwal, another of Meyler's treating physicians. There is no indication that Meyler was deprived of the opportunity to present evidence, or that the ALJ was biased. Contrary to the baseless allegations of Meyler's counsel, there was no improper treatment of paralegal Lynch, or other improper conduct by the ALJ. Meyler's due process claim is unpersuasive.

V.

Meyler also argues the ALJ erred at the last step of the sequential evaluation because he relied on Social Security Rulings ("SSRs") and medical-vocational guidelines, without providing notice, to determine Meyler is able to perform work available in the national economy.

In the case of nonexertional impairments, if the Commissioner relies on an SSR instead of consulting a vocational expert, "it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005). In *Allen*, the ALJ did not focus on the claimant's work-related limitations, such as response

12

to supervision and stress, and failed to connect these particular limitations to any aspect of SSR 85-15. *Id*. at 406-07. We held the Commissioner's finding of no disability was not supported by substantial evidence. *Id*. at 407.

Here also, the ALJ does not explain how Meyler's particular mental impairments relate to the categories or examples in SSR 85-15, or to any aspect of SSR 83-10. *Cf. Allen*, 417 F.3d at 405-06. The ALJ did not explain why, under SSR 85-15 or SSR 83-10, Meyler's nonexertional impairments did not prevent her from meeting the mental demands of unskilled work. The ALJ partly addressed Meyler's anxiety disorder by stating that unskilled jobs usually involve working with objects rather than people, but he did not expressly consider Meyler's alleged anxiety when in public places or working near other people. The ALJ's decision is not supported by substantial evidence.

*Allen* stated that if the Commissioner relies on an SSR as a substitute for individualized determination on testimony of a vocational expert, notice should be given so that the claimant could call her own expert. *Id*. at 407-08. "[A]s a matter of fairness, alerting a claimant to the relevant rule in advance will always be appropriate." *Id*. at 407. Here, the ALJ relied upon SSR 85-15 and SSR 83-10 without calling a vocational expert, and without providing advance notice to Meyler so she could call her own vocational expert. Because the ALJ provided no notice to Meyler, we give close scrutiny to his reliance on an SSR at step five. *Cf*. id. at 408.

The ALJ's decision that Meyler is able to perform jobs prevalent in the national economy is not supported by substantial evidence. We will vacate and remand for further explanation by the ALJ how Meyler's specific limitations affect her ability to perform unskilled work in a job that constitutes substantial gainful employment.[3]

## VI.

We will VACATE the District Court's order and remand for the District Court to refer the matter to the Commissioner for further findings consistent with this opinion.

---

[3]We emphasize that we will remand for the reasons stated, and not because of the frivolous allegations of ALJ bias or impropriety made by counsel for Meyler. There is no reason to assign this matter to a different ALJ.