

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2007

# Davis v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2838

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Davis v. Comm Social Security" (2007). *2007 Decisions.* Paper 736.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/736

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATE COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 06-2838
_____

MARGARET DAVIS,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 04-cv-03354)
District Judge:  Honorable Garrett E. Brown, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
June 27, 2007

Before:  BARRY, FUENTES and JORDAN, *Circuit Judges*.

(Filed July 18, 2007)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Margaret Davis appeals from an order of the United States District Court for the District of New Jersey denying her appeal from the Commissioner of Social Security's final decision that she is not entitled to disability insurance benefits. For the following reasons, we will affirm the District Court's order.

I

Davis seeks disability benefits for the period starting January 1, 1994,[1] based on degenerative disc disease in her back and on depression. According to her testimony on April 3, 2002 before the Administrative Law Judge ("ALJ"), Davis suffers from back, hip, and leg pain that prevents her from sitting for more than ten minutes or walking farther than one block. Davis also testified that she suffered from depression and that she had sought treatment at a mental health clinic. Davis's husband testified that her pain and depression caused her to generally spend her time lying down and that she had stopped doing housework, shopping, or social activities.

The medical evidence indicates that Davis suffers from degenerative disc disease. An x-ray exam from July 1993 and an MRI exam from April 1994 showed mild degenerative changes. In May 1994, Davis's treating physician reported that her back pain was being treated with medication. Medical reports from April 1995 through October 2001 reflected Davis's continued treatment of her back pain with medication and physical therapy. Her pain reportedly decreased after completing prescribed courses of physical therapy in June 1995 and April 1998. In April 1998, Davis's doctor reported

---

[1]Davis's application was filed in May 1995, claiming a disability onset date of March 27, 1992. Her claim was denied initially, on reconsideration, and after a hearing before an Administrative Law Judge in October 1996, and she appealed first to the District Court, which affirmed, and then to this Court. While that appeal was pending, the parties consented to a remand of the case to the Commissioner. The Commissioner, in turn, sent the case back to an Administrative Law Judge for a more complete evaluation of the record evidence regarding Davis's credibility and her claims of depression. At a new hearing, in April 2002, Davis amended her disability onset date to be January 1, 1994.

that she was doing much better, apparently due in part to epidural steroid injections, and he noted that she could expect to return to work in May 1998. Davis received treatment again for pain in her back and hip between September 1999 and March 2000, and again in October 2001 after she aggravated her lower back doing yoga. X-rays of her pelvis and right hip from July 1999 were within normal limits. Davis's doctor again recommended medication and physical therapy.

In August 1996, one of Davis's doctors completed a residual functional capacity questionnaire. He noted the diagnosis of degenerative disc disease and her treatment with medication. According to his evaluation, Davis could lift up to ten pounds, could not carry any weight, could stand or sit for only fifteen minutes at a time, could walk two blocks without stopping, and could not bend or squat. He stated that she was permanently disabled and unable to work because of her pain.

The documentation of Davis's depression begins with a report from July 1997. That report notes that Davis was receiving outpatient treatment for depression and stress, consisting of medication and weekly psychotherapy. She had responded well to medication, but she continued to experience stress caused by her back pain and financial situation. A psychiatrist's report from November 1997 indicated that Davis suffered from depression, caused in part by chronic pain. Her mood, however, appeared good, and her cognitive examination was intact. That report also noted that Davis wanted to continue with medication, but preferred to stop going to therapy. Her treatment continued off and on from 1998 to 2001. In July 1998, a psychiatric report noted that Davis was doing well,

3

and that her pain was better after being treated.  In October 2001, Davis reported that her mood was better on a reduced dose of medication, and, in November 2001, her psychiatrist directed that her medication was to be reduced to zero in six weeks.

In a decision dated January 27, 2003, the ALJ determined that Davis was not entitled to disability benefits.  The ALJ ruled that Davis's degenerative disc disease and depression were not severe enough to meet or medically equal one of the impairments found in the listings for disorders of the spine, former Section 1.05 and new Section 1.04, and for affective disorders, Section 12.04, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ then determined that Davis retained the residual functional capacity to perform sedentary work.  According to the ALJ, "the record does not establish functional limitations other than no prolonged walking and standing, and no heavy lifting."  (Administrative Record at 178.)  Her treatment, including yoga and physical therapy, was consistent with a capacity for sedentary work.  Davis's claim of pain so severe that she was unable to sit for longer than ten minutes was "not entirely credible in light of the reports of the treating and examining medical sources" (*id*.), as well as the fact that she was able to sit through the entire hearing before the ALJ.  Regarding her depression, the ALJ found that the record failed to show any limitations that would prevent her from performing sedentary work.  After determining that Davis had the residual functional capacity for sedentary work, the ALJ found that she could not perform her past relevant work as a factory assembly worker and nurse's aide.  According to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1 (the

4

"Grids"), however, there were jobs in the national economy that she could perform. Therefore, Davis was not disabled.

The Appeals Council declined to review the case, making the ALJ's decision the final decision of the Commissioner. In an opinion dated March 29, 2006, the United States District Court for the District of New Jersey denied Davis's appeal, concluding that the ALJ's decision was supported by substantial evidence. Davis timely appealed to this Court.

II

The District Court had jurisdiction to review the final administrative decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's legal decisions. *Allen v. Barnhart*, 417 F.3d 396, 398 (3d Cir. 2005). We, like the District Court, review the ALJ's findings only to determine if they are supported by substantial evidence. *Id*. Substantial evidence is evidence "a reasonable mind would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The ALJ's decision may not be set aside merely because we would have decided differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

To determine whether an applicant is disabled, the ALJ uses a five-step sequential process to assess: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals an impairment in the Listings; (4) whether her impairment prevents her from

5

performing her past relevant work; and (5) whether she can perform any other work that exists in the national economy in light of her age, education, and work experience. 20 C.F.R. § 404.1520. Here, the ALJ reached step five, concluding that Davis could perform sedentary work that existed in the national economy.

III

Davis argues that the ALJ erred in comparing her disabilities to the Listings, in determining her residual functional capacity, and in determining that she could perform sedentary work that exists in the national economy. As discussed below, those arguments fail.

First, Davis asserts that the ALJ erred in determining at step three that her impairments did not meet the Listings. But Davis has failed to articulate why the combination of her impairments meets or equals the relevant Listings, which, contrary to her assertions, were indeed considered by the ALJ. In the absence of specific arguments to the contrary, and after reviewing the Listings, we conclude that the record supports the ALJ's determination that the evidence failed to show impairments severe enough to meet or equal the Listings.

Second, Davis argues that the ALJ incorrectly determined that she had the residual functional capacity for sedentary work. Specifically, she asserts that because she cannot sit or stand for more than 15-30 minutes at a time, she is unable to perform such work. She also argues that, in concluding to the contrary, the ALJ ignored the medical evidence and improperly questioned the credibility of her testimony about her back pain. We

6

conclude that the ALJ's determination is supported by substantial evidence. The ALJ considered the testimony, but found that the description of the severity of Davis's pain was not consistent with the medical evidence or the fact that Davis remained seated throughout the hearing. Indeed, she practiced yoga and participated in physical therapy exercises, which, along with medication, had been helpful in treating her pain. Thus, the ALJ's determination that her pain was not so severe as to prevent her from doing sedentary work is supported by substantial evidence, even if it is not consistent with the 1996 questionnaire stating that she could not stand or sit for longer than fifteen minutes.

Davis also argues that the ALJ failed to consider her depression in determining her residual functional capacity. However, the ALJ did consider her depression, but determined that her symptoms would not prevent her from performing sedentary work. Although Davis has listed the mental requirements for performing work, such as understanding and carrying out instructions and responding appropriately to supervisors and coworkers, she has failed to articulate why she could not meet those demands. Considering the medical evidence of treatment, which shows good response to medication, no cognitive impairment, and improved mood, the ALJ's determination that her depression would not prevent her from performing sedentary work is supported by substantial evidence.[2]

---

[2]Davis also appears to argue that the ALJ's determination that her impairments were not severe enough to prevent her from doing sedentary work is inconsistent with the determination at step two that her degenerative disc disease and depression were "severe." Given that "[t]he step two inquiry is a *de minimus* screening device to dispose

7

Third, Davis argues that the ALJ erred at step five by relying on the Grids to determine that work existed in the national economy that she was able to perform. "[T]he grids cannot automatically establish that there are jobs in the national economy when a claimant has severe exertional and nonexertional impairments." *Sykes v. Apfel*, 228 F.3d 259, 267 (3d Cir. 2000). According to Davis, her pain and depression present severe nonexertional limitations. However, the ALJ determined that Davis's pain and depression did not put any limitations on her residual functional capacity for sedentary work, and, as discussed above, that determination is supported by substantial evidence. Thus, the use of the Grids was proper.

## IV

For the foregoing reasons, we will affirm the order of the District Court.

---

of groundless claims," *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003), the ALJ's determinations that Davis's claims were not groundless, but that she was nevertheless able to do sedentary work, are not inconsistent.