**Mark M. MADDALONI, Appellant**

v.

**COMMISSIONER OF SOCIAL SECURITY.**

No. 08–3634.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) June 25, 2009.

Filed: Aug. 14, 2009.

Abraham S. Alter, Esq., Langton & Alter, Rahway, NJ, for Appellant.

Sandra M. Grossfeld, Esq., Social Security Administration Office of General

---

Counsel, New York, NY, for Commissioner of Social Security.

Before: BARRY, SMITH, Circuit Judges and DuBOIS, District Judge.*

## OPINION

SMITH, Circuit Judge.

Mark Maddaloni appeals from the judgment of the United States District Court for the District of New Jersey, affirming the final decision by the Commissioner of Social Security to deny Maddaloni's application for disability benefits under Title II of the Social Security Act. The District Court had jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g). Appellate jurisdiction exists pursuant to 28 U.S.C. § 1291. We review the factual findings of the Commissioner for substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks and citation omitted). "Our review of legal issues is plenary." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir.2000).

After twenty-plus years as a union electrician, Maddaloni stopped working in December of 2003 because he was unable to stand for sustained periods of time and to lift heavy equipment and electrical supplies. His limited ability to stand and to lift was attributable to arthritis in his foot, ankle, knee, and back, as well as atrophy of his right shoulder and arm.

Several months later, at the age of 45, Maddaloni applied for Social Security disability benefits. Maddaloni's application focused almost entirely on his alleged physical impairments, but he also alleged mental impairments, specifically depression and anxiety. The administrative law judge (ALJ) conducted the five-step sequential analysis set forth in 20 C.F.R. § 404.1520, and denied Maddaloni's claim for disability benefits. Maddaloni appealed, contending that the ALJ erred at steps two, three, four, and five.[1] We disagree with Maddaloni's contention as it pertains to steps two and three. Because the ALJ's analysis at step five is less than clear, however, we will remand for further proceedings.

■ Maddaloni contends that the ALJ erred by issuing contradictory findings at steps two and three of the sequential analysis. According to Maddaloni, because the ALJ stated that the "evidence regarding the claimant's mental impairment establishes that the claimant has suffered from a dysthymic disorder within the meaning of medical listing 12.04A," he was required to find at step two that Maddaloni had a severe mental impairment and at step three that Maddaloni's mental impairment satisfied or equaled the criteria of the listed impairment at Appendix 1, § 12.04. *See* 20 C.F.R. pt. 404, subpt. P, App. 1.

We cannot agree. Although the ALJ's decision is not a model of clarity, it follows the analysis mandated by the Social Security regulations. Regulation

---

* The Honorable Jan E. DuBois, Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. We need not address Maddaloni's contention that the ALJ erred at step four because this issue was not raised before the District Court, and it is therefore waived. *See Harris v. City of Phila.*, 35 F.3d 840, 845 (3d Cir. 1994) (observing that "[t]his court has consis-

tently held that it will not consider issues that are raised for the first time on appeal"); *Newark Morning Ledger Co. v. United States*, 539 F.2d 929, 932 (3d Cir.1976). Even if the issue had not been waived, there is no merit to Maddaloni's argument that the ALJ failed to articulate an evidentiary foundation for finding that Maddaloni had the residual functional capacity to perform the full range of sedentary work.

404.1520(a)(4)(ii) and (iii) provide that steps two and three of the sequential analysis both "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii) and (iii). Step two of the sequential analysis focuses on whether the claimant has a "severe impairment," i.e., an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities...." 20 C.F.R. § 404.1520(c). If the claimant has a "severe impairment," then step three evaluates whether the limitations resulting from this impairment are severe enough to meet or equal the criteria of an impairment listed in Appendix 1, thereby resulting "in a presumption of disability." Sykes, 228 F.3d at 262 (discussing 20 C.F.R. pt. 404, subpt. P, App. 1); see 20 C.F.R § 404.1520(d).

Regulation 404.1520 applies to both physical and mental impairments. With respect to mental impairments, regulation 404.1520a mandates that a "special technique" also must be employed in evaluating the severity of a mental impairment. 20 C.F.R. § 404.1520a(a). This special technique requires consideration of whether the claimant has a "medically determinable mental impairment[ ]," and if so, "the degree of functional limitation resulting from the impairment[ ]." Id. § 404.1520a(b). In assessing the degree of functional limitation, Regulation 404.1520a provides that four broad functional areas must be considered and each area must be rated on either a five—or four-point scale. 20 C.F.R. § 404.1520a(c)(3) and (4). Subsection (d)(1), which pertains to the analysis at step two, states:

> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limita-

tion in your ability to do basic work activities.

Id. § 404.1520a(d)(1). If the claimant has a severe mental impairment at step two, subsection (d)(2) directs that at step three the medical findings and ratings of the functional limitations must be further evaluated by comparing them to the criteria of the appropriate listed mental disorder in Appendix 1. Id. § 404.1520a(d)(2).

Consistent with the analysis set forth in § 404.1520 and § 404.1520a, the ALJ satisfied the initial prong of determining whether there was a medically determinable mental impairment, 20 C.F.R. § 404.1520a(b)(1), stating that the "evidence regarding the claimant's mental impairment establishes that the claimant has suffered from a dysthymic disorder within the meaning of medical listing 12.04A[.]" Mere diagnosis alone, however, does not complete the statutory analysis necessary at steps two and three as it does not reveal the degree of functional limitation resulting from the claimant's mental impairment. For that reason, the ALJ appropriately proceeded to evaluate the degree of Maddaloni's limitations. The record before us contains substantial evidence to support the ALJ's findings that Maddaloni's functional limitations were either "mild" or "none" in the first three broad functional areas and "none" in the fourth area. Accordingly, the ALJ's determination at step two that Maddaloni's mental impairment was not severe is consistent with § 404.1520a(d)(1). See Branum v. Barnhart, 385 F.3d 1268, 1272–73 (10th Cir.2004) (concluding that the ALJ appropriately evaluated claimant's dysthymic disorder at step two in the analysis by applying the special technique and that ALJ did not err by concluding that mental impairment was not severe).

■ Maddaloni also argues that the ALJ erred at step five of the sequential

analysis. Step five requires that the ALJ consider the claimant's residual functional capacity (RFC), age, education, and work experience to determine if he is able to perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v) and (g). The government bears the burden at step five of demonstrating that other work exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). To this end, the government may rely on the medical vocational guidelines, known as the "grids," to establish the existence of such jobs. *See* 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(b). As we explained in *Sykes,* however,

> [t]he grids establish, for exertional impairments only, that jobs exist in the national economy that people with those impairments can perform. When a claimant has an additional nonexertional impairment, the question whether that impairment diminishes his residual functional capacity is functionally the same as the question whether there are jobs in the national economy that he can perform given his combination of impairments. The grids do not purport to answer this question, and thus ... the practice of the ALJ determining without taking additional evidence the effect of the nonexertional impairment on residual functional capacity cannot stand.

228 F.3d at 270.

Here, Maddaloni asserts that the ALJ erred at step five. He contends that, contrary to *Sykes,* the ALJ applied the grids even though she considered a nonexertional impairment. Indeed, the ALJ reasoned:

> If the claimant had the residual functional capacity to perform the full range

of sedentary work ..., a finding of "not disabled" would be directed by Medical–Vocational Rule 201.28. However, the *additional limitations* have little or no effect on the occupational base of unskilled sedentary work. A finding of "not disabled" is therefore appropriate under the framework of this rule.

(Emphasis added). The ALJ's reference to "additional limitations" is problematic because there is more than one limitation and none of these limitations have been identified. Thus, we are unable to determine if these limitations were nonexertional in nature, thereby precluding application of the grids under *Sykes.*[2] For that reason, we will vacate the judgment of the District Court and remand for further administrative proceedings. On remand, the ALJ shall specifically identify the "additional limitations" to which she referred and whether those limitations are exertional or nonexertional in nature. In addition, the ALJ shall explain whether these particular limitations preclude application of the grids. *See Allen v. Barnhart,* 417 F.3d 396, 407 (3d Cir.2005) (instructing that reliance upon a Social Security Ruling requires that the factfinder "be crystal-clear that the [Ruling] is probative as to the way in which the nonexertional limitations impact the ability to work"). If so, the ALJ shall conduct further proceedings as required under the Social Security Act and by our ruling in *Sykes.*

---

2. Maddaloni presumes that these "additional limitations" are nonexertional mental limitations. He may be correct. It is possible, however, that these limitations relate to pain, which may be exertional or nonexertional under 20 C.F.R. § 404.1569a(b) and (c), or are nonexertional limitations that are the subject of administrative rulemaking that establishes that these limitations do not significantly erode the occupational base of sedentary work. *See Sykes,* 228 F.3d at 261; *Allen v. Barnhart,* 417 F.3d 396, 403–05, 407 (3d Cir. 2005); and *Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 94 (3d Cir.2007).