

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-2007

# Orriols v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2268

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Orriols v. Comm Social Security" (2007). *2007 Decisions.* Paper 1217.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1217

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2268

EVELYN ORRIOLS,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 04-cv-05825)
District Judge: Honorable Joseph A. Greenaway, Jr.

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2007

Before: SLOVITER and AMBRO, Circuit Judges
POLLAK,* District Judge

(Filed: April 25, 2007)

OPINION

AMBRO, Circuit Judge

---

*Honorable Louis H. Pollak, Senior United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

Evelyn Orriols appeals from an order of the United States District Court for the District of New Jersey affirming the decision of the Commissioner of Social Security (the "Commissioner")[1] denying her application for Supplemental Security Income ("SSI") benefits. Orriols asserts that the decision of the Administrative Law Judge ("ALJ") and the District Court's affirmation of that decision are unsupported by substantial evidence and therefore should be reversed and remanded for a new hearing. For the reasons that follow, we affirm the order of the District Court.

## I. Facts and Procedural History

Because we write solely for the parties, we set forth only those facts relevant to our analysis. Orriols was thirty-six years old at the onset of her alleged disability. She lives in an apartment with her three teenage children. She has a ninth-grade education, and held several jobs prior to the onset of her alleged disability.[2] Her last position as a part-time dental office receptionist entailed answering phones, handling filing, cleaning instruments, and storing supplies.

---

[1] On January 22, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Fed. R. App. P. 43(c)(2), she replaces former Commissioner Joanne B. Barnhart as the defendant in this suit.

[2] From 1998 to 1999, Orriols worked as a receptionist in a car dealership where she filed, answered phone calls and customer inquiries, and occasionally was required to carry boxes. From 1999 to 2001, Orriols was employed as a part-time bus aide where she assisted in transporting handicapped children to and from school; this job also involved some lifting.

Orriols filed an application for SSI benefits in September 2002, alleging disability as of October 2001, resulting from upset stomach, liver ailments and depression. The Commissioner denied her application initially and again on reconsideration. Orriols requested and was granted a hearing before an ALJ in January 2004. The ALJ held that Orriols was not disabled within the meaning of the Social Security Act (the "Act") and therefore not entitled to SSI benefits under the Act. Orriols's subsequent request for review by the Social Security Appeals Council was denied. Orriols then appealed to the District Court, which affirmed the Commissioner's decision. This appeal followed.

The following evidence was offered before the ALJ.

*Dr. Takla*

Dr. Sarwat Takla has been Orriols's primary care physician since December 2001. Dr. Takla's first report, dated December 2002, indicated that blood work from Orriols' December 2001 visit came back with an elevated bilirubin level, but that the remainder of the liver function test was normal.

In March 2002, Orriols had an ultrasound of her abdomen. The ultrasound revealed her liver and spleen to be normal in size, shape, and acoustic pattern and that no gall stones were present. In July 2002, Dr. Takla referred Orriols to Dr. Jaffer Khan. Dr. Khan, a gastroentreologist, determined that a biopsy revealed moderate chronic, active inflammation and gastroesophageal reflux disease.

Orriols underwent a liver biopsy in September 2002. It showed reactive changes

of hepatocyte, mild to moderate distortion of the arcade picture, mild to moderate intercellular cholestasis and minimal rare fibrosis. Based on this information, Dr. Takla's final impression of Orriols's health on December 26, 2002 was an "abnormal liver function test most likely due to intracellular cholestasis."

Omitted from Dr. Takla's December 2002 report is an emergency room visit in September 2002, when Orriols went to a hospital complaining of abdominal pain. The treating physician found that an examination did not reveal the exact cause of the pain, and instructed Orriols to return if the pain did not subside within one to two days. Tests conducted at the hospital revealed a normal liver.

In July 2003, Dr. Takla dictated a report to the New York State agency that was based on a June 2003 examination of Orriols. In addition to the medical history above, the report also indicated that Orriols was now being followed by a liver specialist, and that she also had been referred to a psychiatrist for depression.

*Dr. Oleg*

Dr. Frank Oleg, a consulting physician at the Department of Labor's Division of Disability Determination Services, examined Orriols. Dr. Oleg diagnosed Orriols with a past history of significant abnormal liver testing. His opinion was that Orriols needed further evaluation, but was able to "sit, stand, walk, lift, carry, handle objects, hear, speak, and travel." Dr. Oleg also found that Orriols was unable to sit for prolonged periods of time without experiencing symptoms of abdominal pain that sometimes caused loose

4

stools.

*Dr. Burk*

Dr. Kopel Burk completed a functional assessment for a State agency in February 2003. He determined that Orriols had no manipulative, visual, communicative or environmental limitations, and concluded that Orriols's symptoms will have little effect on her ability to function in an efficient manner at work.

*Dr. Hasaj*

Orriols offered testimony from Dr. Mario Hasaj, who examined her for depression in August 2004. Dr. Hasaj's psychiatric evaluation stated that Orriols's three-year-long depression had not improved despite use of Paxil and Ambien for two months. Orriols's mood was depressed or anxious and her affect constricted. Additionally, Dr. Hasaj noted that Orriols was of average intellectual functioning and of good insight and judgment. He concluded that Orriols suffers from a depressive disorder. She sees a therapist every two weeks.

*Dr. Fechner*

Dr. Martin Fechner, an independent medical expert, testified before the ALJ at the January 2004 hearing. He stated that there was sufficient reason to do a liver biopsy, but that the biopsy only revealed reactive changes and a mild to moderate distortion of the liver. Further, Dr. Fechner noted that Orriols's most recent blood tests showed enzyme levels that negated the existence of liver disease. Dr. Fechner also stated that he could

not discern a cause of Orriols' fatigue based on her medical chart and that she should be able to do a full range of light activity.

## II. Standard of Review

In an appeal of a District Court's decision affirming the Commissioner's denial of supplemental income benefits, our review of legal issues is plenary.[3] *Allen v. Barnhart*, 417 F.3d 396, 398 (3d Cir. 2005). We review the ALJ's factual findings to determine whether they are supported by substantial evidence. *Id*. "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclsuion.'" *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The issue we must decide is whether the ALJ's decision that Orriols was not disabled, and thus not entitled to SSI benefits, is supported by substantial evidence based on the record as a whole.

## III. Discussion

Eligibility for benefits under the Act is conditioned on compliance with all relevant requirements of the statute. The Social Security Administration is authorized to pay SSI

---

[3] The District Court had subject matter jurisdiction pursuant to 42 U.S.C.§ 405(g). We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.

benefits to persons who are "disabled." 42 U.S.C. § 1382 . A person is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 21–22 (2003).

To determine disability, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential analysis, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4).

At step one, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a). If so, the claimant is not disabled regardless of her medical condition. 20 C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to consider whether a "severe" impairment or combination of impairments exists that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R § 404.1520(c). If a claimant's condition is deemed severe, the Commissioner, in step three, consults Appendix 1 of the regulations to determine whether that impairment or its equivalent is listed. 20 C.F.R. § 404.1520(d); *see* 20 C.F.R. Pt. 404,

7

Subpt P, App.1 (listing impairments presumed to be severe enough to preclude substantial gainful activity).

If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. In step four, the Commissioner determines whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520 (e). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000). At step five, the burden shifts to the Commissioner. It requires the Commissioner to demonstrate that the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R.§ 404.1520(g). To make this determination, the Commissioner considers a claimant's residual functional capacity along with her age, education, and past work experience to determine if she can perform other work in the national economy. *Id.*; *Burnett*, 220 F.3d at 118.

Orriols claims that the ALJ erred at steps three and four because the ALJ's findings are not supported by substantial evidence. Specifically, Orriols argues that the ALJ failed to: (1) correctly evaluate Orriols's liver impairment, in that the ALJ found the impairment did not meet or equal the statutory listing of impairments in step three; (2) follow our Court's holding in *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981), by failing to articulate evidentiary reasons for the residual functional capacity determination in step

four and, particularly, by omitting an explanation of his consideration of Orriols' pain; and (3) consider all of her impairments, specifically the effect of her depression, in the residual functional capacity determination.

## A.

As noted above, Orriols argues that the ALJ erred in step three when he determined that her ailments were not equivalent to any of the statutory listed illnesses that are presumed to be disabling. The ALJ is required to state the reasons for his decision to ensure meaningful judicial review. *Burnett*, 220 F.3d at 119. Only the essential considerations upon which the ALJ bases a decision must be noted. *See Cotter*, 650 F.2d at 704 (stating that the ALJ must consider all evidence and provide an explanation for rejected evidence that would suggest a contrary disposition, and indicating that in most cases a sentence or short paragraph will suffice). Here, the ALJ explained that "[p]articular consideration" had been given to the medical listing. Specifically, the ALJ noted the absence of documentation of chronic liver disease by a liver biopsy, as required under 20 C.F.R. Pt. 404, Subpt. P, App.1, at F.

The ALJ explained his determination by stating that the evidence suggested only mild liver disease as determined by Dr. Fechner. With respect to the claimed mental disease, the ALJ determined that Orriols did not meet the requirements under the "B" criteria of the medical listings in section 12.00 found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ met his obligations to consider all the evidence and explain his reasoning.

9

*See Cotter*, 650 F.2d at 704. Based on Drs. Fechner, Burk and Oleg's conclusions that Orriols has mild liver disease, there is substantial evidence in the record to support the ALJ's determination that "[t]he medical evidence indicates that the claimant has liver disease and depression, impairments that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to[,] one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."

B.

Additionally, Orriols contends that the ALJ failed to give reasons for his determination that Orriols has the residual functional capacity for light work and to explain his consideration of Orriols's subjective complaints of pain. When determining a claimant's residual functional capacity, the ALJ must consider all relevant evidence. *Fargnoli,* 247 F.3d at 41. In addition, the ALJ must give a "clear and satisfactory explication of the basis on which [the residual functional capacity] rests." *Cotter*, 642 F.2d at 704.

Here, the ALJ considered all relevant evidence. Specifically, he discussed evidence provided by Drs. Takla, Hasaj, Fechner, and Frank. The ALJ credited Dr. Fechner's explanation because he was an impartial medical expert giving an opinion in his particular field of expertise. In relying on Dr. Fechner's testimony, the ALJ noted that Orriols's most recent blood tests were essentially normal, and Orriols suffered from mild

10

liver disease. In particular, the medical evidence did not substantiate the degree of fatigue alleged. There is substantial evidence in the record to support the conclusion that Orriols suffers from mild liver disease and that this only precludes her from performing medium to very heavy work. *See Fargnoli*, 247 F.3d at 38.

The ALJ also considered Orriols subjective complaints of disabling pain, mental distress, and other symptoms. He noted that the record did not support the extent of Orriols' complaints even when the medical and non-medical elements were considered together. Additionally, he stated that Orriols' assertions of pain and symptoms are reasonable to a degree, but not to the debilitating extent asserted. The ALJ's determination is supported by several facts; including: 1) indication in the record that Orriols may have stopped working for reasons other than her alleged disability; 2) reports that her condition has not significantly deteriorated since her absence from work; and 3) evidence that she is able to conduct normal daily activities.

Orriols's arguments that the ALJ neglected to articulate the evidentiary weight accorded to facts, and to explain his reasoning for the residual functioning capacity determination, fail. The ALJ's opinion noted that non-examining physicians, like Dr. Fechner, are not normally given as much weight as a treating physician. However, here, the ALJ accorded Dr. Fechner's opinion some weight because other facts in the record supported the doctor's assessment of mild liver disease. The ALJ continued to explain that Dr. Takla, Orriols's treating physician who is entitled to greater weight, never

11

concluded that Orriols was disabled or completely unable to work. In this context, the ALJ met his obligations under *Cotter* to provide a clear and satisfactory explanation of the basis for his decision. *See Cotter*, 642 F.2d at 704.

C.

Regarding Orriols' alleged mental disability, the record shows that the ALJ considered all relevant evidence and that his determinations are supported by substantial evidence. The ALJ considered Dr. Hasaj's finding that Orriols suffered from a depressive disorder based on her complaints of nervousness, an inability to sleep, depression, anxiety, and fatigue. Additionally, the ALJ's opinion noted that Orriols's thought processes were logical and goal-directed and her intellectual functioning was adequate; in essence, Orriols possessed adequate insight and judgment.

Based on these considerations, the ALJ found that Orriols suffered from a depressive disorder and that she had functional limitations (though slight). Such limitations, in the ALJ's opinion, would not have more than a minimal effect on her ability to perform work-related activities. These determinations are supported by substantial evidence, and thus it is reasonable to conclude that she was able to perform light work-related activities when her intellectual functioning was adequate.

*   *   *   *   *

We affirm the District Court's order affirming the Commissioner's denial of

12

benefits.[4]

---

[4]In closing, we note with displeasure the conclusory and unprofessional assertions that pervade Orriols's brief. To accuse the ALJ of incompetence and partiality, among other failings, is most serious. In the context of this case, such conduct is offensive, reflects ill on counsel, and fails to serve his client. We trust that, in the future, counsel will recall our remarks here and act appropriately.