

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-2007

# Cruz v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2808

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Cruz v. Comm Social Security" (2007). *2007 Decisions*. Paper 640.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/640

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 06-2808
_____

JOSE A. CRUZ,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 05-cv-00396)
District Judge: The Honorable Jose L. Linares
_____

Submitted Under Third Circuit LAR 34.1(a)
June 27, 2007

Before: BARRY, FUENTES and JORDAN, *Circuit Judges.*

(Filed August 1, 2007)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Jose Cruz appeals from an order of the United States District Court for the District

of New Jersey affirming the decision of an Administrative Law Judge (ALJ) denying his

claim for Supplemental Security Income and Disability Insurance Benefits.

The District Court had jurisdiction to review the final administrative decision of the Social Security Administration under 42 U.S.C. §§ 405(g) and 1383(c)(3). We have jurisdiction over this appeal under 28 U.S.C. § 1291. For the following reasons, we will affirm the District Court's order.

## I.

Cruz claims that he became disabled on May 21, 2002 due to HIV infection, asthma, and depression. Cruz applied for Social Security disability benefits on November 19, 2002. On February 28, 2003, his claim was denied. His subsequent request for reconsideration was also denied. Cruz then requested a hearing in front of an ALJ on September 8, 2003. In the relevant forms filed with that request, he claimed disability on the basis that his "T-cells are dropping. I am very depressed." On May 28, 2004, the ALJ denied Cruz's request for disability benefits. Cruz petitioned the Appeals Council for review, which denied his request on November 24, 2004. Therefore, the ALJ's opinion constituted the final administrative decision.

In reaching his decision, the ALJ applied the five-step sequential analysis mandated by 20 C.F.R. §§ 404.1520 and 416.920. Using this standard, the ALJ first determined that Cruz had not been gainfully employed since May 21, 2002. Next he determined that Cruz's HIV, asthma, and depression were severe within the meaning of 20 C.F.R. §§ 404.1520 and 416.920, but that they were not severe enough to meet or medically equal, alone or in combination, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Finally, after considering and weighing all of the evidence,

2

the ALJ determined that neither Cruz's physical nor his mental impairments were severe enough to prevent him from doing his past relevant work.

The District Court affirmed the ALJ's decision, finding that it was supported by substantial evidence and that it properly followed the five-step evaluation process. After reviewing the evidence presented, the Court found that the evidence supported the ALJ's determinations as to the severity of Cruz's HIV, asthma, and depression. The Court also found that the ALJ had made reasonable determinations as to the credibility of the findings of the reviewing physicians, supporting his decisions with medical evidence, and that the ALJ was reasonable in finding that Cruz's testimony was not credible.

From 1980 until he stopped working in 2002, Cruz had 36 employers and held jobs as a cashier, cleaner, food server, waiter, picker-packer and sales person. According to Cruz, the jobs in food service and as a picker-packer required him to walk and stand about 4 hours each in a day and lift no more than 20 pounds. Cruz also reported that while working as a maintenance worker in 2002, he was not exposed to extreme weather, heat or fumes.

Cruz claimed that he became disabled due to HIV, asthma, and depression. He also stated that he experienced stabbing back and leg pain, four times a week, lasting 30 minutes, which was caused by standing too long. According to Cruz, Motrin relieved the pain. As a result of his fatigue and depression, Cruz claimed he had trouble getting up in the mornings, causing him to arrive late to work and lose his job.

In a questionnaire that Cruz completed in November of 2002, he stated that he lived alone but cooked, cleaned, shopped for himself, paid his own bills, and managed his own money, despite his inability to read or write. At his hearing before the ALJ, Cruz testified that he no longer does his own cooking, cleaning or grocery shopping, and he can no longer take public transportation because he cannot stand long enough to wait for the bus. However, he also stated that he takes the bus once a week, for 30 minutes, to see his mother. He claimed that twice a week he just stays in bed and will not get up. Also, his appetite is weak and he does not sleep well. He alleged a suicide attempt in 2002, but upon questioning from the ALJ, he admitted that he had not actually attempted suicide but merely thought about it. Cruz also stated that he was illiterate, but he later admitted that he could read a short note, but could not write it.

Cruz's primary medical care was received at the Jersey City Medical Center. According to his medical records, between July 16, 2002 and July 28, 2003, Cruz complained of sinusitis, depression, insomnia, back and leg pain, heartburn, allergies, dizziness and forgetfulness. Overall, Cruz's weight was stable, varying between 150 and 154 pounds; his pain reports indicated no pain except for two visits in April and June 2003, which noted pain ratings of 3 to 4 on a 10 point scale; and his Karnofsky scores were always 100.[1]

---

[1]"The Karnofsky scale is a widely used performance scale, assigning scores ranging from 0 for a nonfunctional or dead patient to 100 for one with completely normal functioning." Appellee's Brief. at 4, n. 2 (citing *Dorland's Illustrated Medical Dictionary* at 1660 (30th ed. 2003)).

On February 19, 2003, Cruz was evaluated by Dr. Merlin, M.D. Cruz reported HIV, fatigue, forgetfulness, loss of appetite, weight loss and diarrhea. He reported no major asthma attacks.[2] Dr. Merlin confirmed Cruz's HIV diagnosis but noted that his pulmonary function test for asthma was normal. He further indicated that Cruz could "sit, stand, walk, lift, carry, handle objects, hear, speak and travel, but should not be exposed to dust, fumes or extremes in temperature." Based on that evaluation, Cruz's Physical Residual Functional Capacity Assessment indicated that Cruz could occasionally lift 50 pounds and could frequently lift 25 pounds, that he could stand, walk, and sit for a total of 6 hours each per day and that he was unlimited in his ability to push and pull.

On February 14, 2003, Cruz was evaluated by Dr. Fernandez, Ph.D. Cruz reported problems with HIV, asthma, forgetfulness, headaches, insomnia, suicidal thoughts, and weakness. He claimed that he once attempted suicide but vomited. Based on that, Dr. Fernandez diagnosed Cruz with "major depressive disorder, moderate, recurrent without psychotic features. Generalized anxiety disorder. Dementia disorder due to HIV. Insomnia disorder." He further noted that Cruz's primary problem was HIV infection.

Based on that evaluation, Cruz's Mental Residual Functional Capacity Assessment indicated moderate limitations in understanding and memory, sustained concentration and persistence, and social interaction and adaptation. The assessment noted that Cruz had major depressive disorder and generalized anxiety disorder that did not precisely satisfy

[2] Cruz reported one hospital visit related to his asthma due to his not having his inhaler and his physician being unavailable.

5

the diagnostic criteria required by the Impairment Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, Paragraphs 12.04 and 12.06 (the "A" criteria of the Listings). The assessment also indicated that Cruz had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and that Cruz had no extended episodes of decompensation (the "B" criteria of the Listings). The assessment indicated that the "C" criteria of the Listings are not present.[3]

In an examining physician's report dated June 3, 2003, Dr. Grigoriu, M.D. of the Jersey City Medical Center indicated that Cruz suffered from HIV with subordinate diagnoses of depression, back pain, a cyst on the head and seasonal allergies. She concluded that Cruz should not work for 30 to 90 days, but there is no supporting information for that assessment.

## II.

When reviewing the decision of a District Court affirming a decision by the ALJ denying Social Security disability benefits, we exercise plenary review. *Allen v. Barnhart*, 417 F.3d 396, 398 (3d Cir. 2005). We review the ALJ's findings to determine if they are supported by substantial evidence. *Id*. Substantial evidence is the evidence "a reasonable mind would accept as adequate to support a conclusion." *Richardson v.*

---

[3]20 C.F.R. Part 404, Subpart P, Appendix 1, Paragraph 12.00(A) indicates that there are C criteria for illnesses listed in 12.04 and 12.06 that will only be assessed if the B criteria are not satisfied. In order for a disability to be indicated, applicant must satisfy the A and B or the A and C criteria for a particular listing.

*Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The ALJ's decision may not be set aside merely because we would have reached a different decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

In order for this Court to effectively review an ALJ's decision to determine if it is supported by substantial evidence, the ALJ must discuss "the evidence he considered which supports the result," as well as indicate "the evidence which was rejected." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Furthermore, where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination. *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978).

## III.

In order to determine if an applicant is entitled to Social Security disability benefits, the ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(i)-(v). A negative conclusion at steps one, two, four or five precludes a finding of disability. "An affirmative answer at steps one, two or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability." *Id.*, *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992) (citations omitted).

### A.

Cruz enumerates six arguments as to why the ALJ's decision under the five-step evaluation is not supported by substantial evidence. First, and most significantly, Cruz alleges that the ALJ failed to articulate an analysis at step three of the sequential evaluation and that if the ALJ had performed the proper step-three analysis he would have found that Cruz's impairment is the medical equivalent of paragraph 14.08(N) of 20 C.F.R. Part 404, Subpart P, Appendix 1. Step three requires that where an ALJ has found a "severe impairment," he must then decide if the impairment meets or medically equals one of the impairments in Appendix 1. 20 C.F.R. 404.1520(a)(4)(iii).

The ALJ gave an adequate explanation for his finding that each of Cruz's impairments failed to meet the Appendix 1 requirements. Under Paragraph 3.03, relating to asthma, Cruz has not proven a history of chronic asthmatic bronchitis or attacks requiring physician intervention. Under Paragraph 12.04 (Affective Disorders) and 12.06

8

(Anxiety-Related Disorders), Cruz's Mental Residual Functional Capacity Assessment indicated that he did not adequately meet any of the "A," "B," or "C" criteria. While it would have been preferable for the ALJ to specifically indicate that he examined paragraphs 12.04 and 12.06 in his analysis, the ALJ is correct in concluding that under the circumstances, lacking a marked limitation in one of the "B" criteria, Cruz cannot satisfy the requirements of the mental disorders in those listings.

Regarding HIV impairment, Cruz claims that the ALJ should have combined all of his pulmonary, psychiatric and HIV-related symptoms and compared them to one listing: 14.08(N) for HIV infection. Even combining all of his complaints, Cruz fails to meet the requirements for disability due to HIV infection. The Listing requires "repeated [...] manifestations of HIV infection [...] resulting in significant documented symptoms or signs," which Cruz has failed to show. In addition, it requires "(1) restriction of activities of daily living; or (2) difficulties in maintaining social functioning; or (3) difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace" at a marked level. 20 C.F.R. Part 404, Subpart P, Appendix 1, Paragraph 14.08N. That requirement is substantially similar to the "B" criteria of the 12.04 and 12.06 listings. *Compare* 20 C.F.R. Part 404, Subpart P, Appendix 1, Paragraph 12.00(C)(1)-(3) *with* Paragraph 14.00(D)(8). According to Cruz's Mental Residual Functional Capacity Assessment, he has only mild to moderate (less than marked) restrictions in those areas.

Thus, the ALJ's conclusion at step three that Cruz's complaints did not meet or medically equal any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 is supported by substantial evidence.

B.

Next Cruz contends that the ALJ improperly rejected his subjective complaints of pain. Where an applicant for disability benefits complains of pain, that testimony may not be discredited on the basis of the ALJ's own medical judgment; it must be discredited by contradictory medical evidence. *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983). Nor may an ALJ disregard relevant medical evidence without basis. *Id.* However, where there is little evidence to support subjective complaints of pain, and there is evidence that medication relieves the pain, an ALJ may decide that there is insufficient evidence to support a finding of disability. *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

In this case, the only medical evidence to support Cruz's complaints of pain are subjective pain ratings. First, in an Adult Pain Report, Cruz alleged that he had stabbing leg pains four times a week that lasted about 30 minutes. Even so, he still noted that Motrin relieved the pain. However, in medical records from the Jersey City Medical Center, Cruz complained of pain only twice, on April 22, 2003 and June 18, 2003, rating his pain as 3 to 4 on a 10 point scale. Even with these self-assessments by Cruz, the examining physician gave Cruz Karnofsky scores of 100 on both dates. Moreover, Cruz claimed that he was unable to work due to an inability to get out of bed in the morning, not due to pain.

10

In light of the contradictory testimonial evidence[4] and insufficient medical evidence, the ALJ's determination that Cruz's complaints about pain were not credible is supported by substantial evidence.

C.

Cruz further alleges that the ALJ failed to articulate an evidentiary basis for his residual functional capacity determination. In the fourth step of the sequential evaluation process, the ALJ must determine if the plaintiff has the residual functional capacity to do his past relevant work. 20 C.F.R. 404.1520(a)(4)(iv). If the ALJ finds that the plaintiff can do his past relevant work, he will be found to be not disabled. *Id.*

The ALJ, in his analysis of Cruz's residual functional capacity, incorporated by reference his discussion of the facts in the introduction to his opinion, and also gave additional consideration to the medical reports and a thorough analysis of Cruz's testimony. Where there was conflicting medical evidence, he made credibility determinations and satisfactorily supported those choices in his discussion of the facts. Specifically, the ALJ noted that Dr. Fernandez's finding of significant affective problems was inconsistent with his GAF rating of 60 and his conclusion that Cruz's primary impairments were medical. The ALJ also found that there was no evidence in the record to support the finding of moderate limitations in mental functioning. Finally he

---

[4]The ALJ noted other inconsistencies in Cruz's testimony, giving weight to the fact that he contradicted himself as to whether or not he could read and whether or not he attempted to commit suicide.

disregarded the assessment of "no work" on a welfare form because it lacked probative value and was not supported by the evidence on record.

The ALJ then determined that Cruz's past relevant work was "light work"and that Cruz "had the capacity to return to these occupations as he performed them." Dictionary of Occupational Titles 211.462-010. Specifically, information Cruz provided in various forms indicated that he was not exposed to extreme weather or fumes on the job, and that the most he was required to lift in past employment was 20 to 25 pounds. This is consistent with the restrictions indicated in Cruz's Physical Residual Functional Capacity Assessment.

Therefore, the ALJ's findings as to Cruz's residual functional capacity are supported by substantial evidence.

## D.

Finally, Cruz claims that "the ALJ finds appellant to suffer a severe mental impairment but finds no restrictions on the basis of that impairment," and that "the ALJ fails to compare appellant's past work on a task-by-task basis with his RFC." With respect to the first contention, the ALJ wrote that Cruz's impairments are severe but not severe enough to "meet or medically equal, either singly or in combination, any of the impairments listed" in 20 C.F.R. Part 404, Subpart P, Appendix 1. That conclusion is bolstered by the fact that Cruz has mild to moderate (not marked) limitations in the "B"

12

criteria of the 12.00 listings.[5] This indicates that limitations exist, but they are not severe enough to satisfy the listing requirements. 20 C.F.R. Part 404, Subpart P, Appendix 1, Paragraphs 12.04 and 12.06. The ALJ never denied that there are restrictions inherent in Cruz's condition. He merely concluded that those restrictions are not significant enough to prevent Cruz from working.

With regard to the second contention, the ALJ did make a comparison between the requirements of Cruz's past work and Dr. Merlin's and Dr. Fernandez's medical and psychological evaluations. The record indicates that Cruz's past work required him to walk and stand about 4 hours each in a day and to lift no more than 20 pounds. He also indicated that he was not exposed to extreme weather, heat or fumes. Dr. Fernandez found that Cruz's primary problem was medical (HIV), and Dr. Merlin found that Cruz could sit, stand, walk, lift, carry, handle objects, hear, speak and travel but should avoid exposure to extreme temperature, dust and fumes. These findings are supported by Cruz's Mental and Physical Residual Functional Capacity Assessments. Because Cruz was found capable of doing the tasks and working under the conditions present in his previous jobs, there is substantial evidence that Cruz could do his past relevant work.

---

[5]The "B" criteria indicate the degree of functional limitation resulting from an individual's mental disorders. Limitation is measured in three areas, "restriction of activities of daily living," "difficulties in maintaining social functioning," and "difficulties in maintaining concentration, persistence or pace." *E.g.*, 20 C.F.R. Part 404, Subpart P, Appendix 1, Paragraphs 12.04, 12.06. Cruz's Mental Residual Functional Capacity Assessment indicated that Cruz had limitations in each area, but that these limitations were not severe enough to allow a finding of disability.

13

The ALJ's conclusions that Cruz's impairments were severe, but not severe enough to satisfy any of the listed impairments and that Cruz's residual functional capacity allowed him to perform his past relevant work are therefore supported by substantial evidence.

## IV.

Because the ALJ examined all of the evidence, made determinations as to the relative credibility of conflicting medical records, and properly supported those determinations by reference to the record, his ruling is supported by substantial evidence. Therefore, we affirm the decision of the District Court.

## V.

We are required to add a regrettable coda by noting that Cruz's attorney, Mr. Alter, made several unprofessional comments in his brief, going so far as to accuse the ALJ of misconduct. For example, in his discussion of the step-three analysis, he writes that the ALJ "intentionally fixed the analysis to avoid what he knows to be the appropriate listing," "finess[ed] step three," and "tortur[ed] the evidence to death." He also accuses the ALJ of "not be[ing] an objective decider of the facts," "hav[ing] an agenda," making "intentional errors," arriving at a "predictably goal-directed decision," and "wish[ing] diagnoses and restrictions away." Finally he calls the ALJ's decision a "disaster [that] must be sent back from whence it came," and demands that his client be "put out of his social security misery." Heated rhetoric like this does nothing to advance

14

a client's cause.  It serves only to distract attention from the merits and to call counsel's judgment into question.

Were this counsel's first offense, this might warrant nothing more than a footnote. But it is not.  Nor is it the second, or third, or fourth offense.  Sadly, Mr. Alter has become an habitual offender of the norms expected of attorneys appearing before this court, and his behavior has become prejudicial to the administration of justice.  His history of unprofessional conduct before us extends back to at least October 2000.  In the brief he filed in *Frazier v. Commissioner of Social Security*, No. 00-1427 (3d Cir. Oct. 23, 2000),  he hurled insults in a manner that has become his trademark.  After calling the ALJ's decision "entirely incompetent,"  2000 WL 34024365 at *8, he proceeded to discuss the ALJ's "breathtaking ignorance," *id*. at *11, the ALJ's "ridiculous assumption," *id*. at *13, and the ALJ's attempted "evidence nullification," *id*. at * 16, and "quackery," *id*. at *17 n. 1.  He summed up by concluding that the ALJ's "analysis is one-third invention, one-third ignorance and one-third inspiration." *Id*. at *18.  It appears from an order in a later case that Mr. Alter was reprimanded for those comments. *See* Docket for *Meyler v. Commissioner of Social Security*, No. 06-4280 (3d Cir. June 22, 2007).

His next reprimand (or at least the next we have found) came in 2003, in *Neal v. Commissioner of Social Security*, in which the Court said that "Counsel must avoid pejorative and unfounded arguments.  They ill serve his client and adversely affect his credibility."  57 Fed. Appx. 976, 978 n.2 (3d Cir. Feb. 10, 2003).  In 2006, we reprimanded Alter for his "conclusory and unprofessional assertions."  *Hernandez v.*

15

*Commissioner of Social Security*, 198 Fed. Appx. 230, 236 (3d Cir. Sept. 15, 2006). Later last year, in *Watson v. Commissioner of Social Security*,  No. 06-1973, we had to read Mr. Alter's brief demeaning an ALJ as "not hav[ing] read the finished product of his ghost-writing assistant" (Appellant's Br. at 7), and asserting that to focus on the ALJ's analysis "would be to miss the delicious stupidity of the actual decision" (*id*.) and its "amazingly uninformed findings."  (*Id*. at 8.)

This year, Mr. Alter has accelerated the pace of his unprofessional outbursts.  So far, we have reprimanded him three times and, on one of those occasions, stricken the brief he filed.  In *Orriols v. Commissioner of Social Security*, we noted that, "conclusory and unprofessional assertions ... pervade Orriols's brief," and that Mr. Alter had accused "the ALJ of incompetence and partiality."  2007 WL 1211653, at *5 n. 4 (3d Cir. Apr. 25, 2007).  We further stated that Mr. Alter's "conduct is offensive, reflects ill on counsel, and fails to serve his client." *Id*.  The brief he filed in *Meyler v. Commissioner of Social Security*, was struck for violating Local Appellate Rule 28.1(c), which requires "counsel to exercise appropriate professional behavior in all briefs and to refrain from making *ad hominem* attacks on opposing counsel or parties." *See* Docket for *Meyler*, No. 06-4280 (3d Cir. June 22, 2007).  The order striking the brief criticized his work for being "rife with *ad hominem* attacks," and employing "language that we deem offensive and for which there can be no justification or excuse." *Id*.  We further warned that "any such similar conduct [in the future] will result in the issuance of an Order to Show Cause as to why [Alter] should not be sanctioned under Rules 11(b) and (c) of the Federal Rules of

16

Civil Procedure." *Id.* Earlier this month, in a decision coincidentally named *Frazier v. Commissioner of Social Security*, Mr. Alter received the following rebuke: "counsel has once again failed to meet the expectation that counsel 'exercise appropriate professional behavior in all briefs' ... by engaging in *ad hominem* attacks on the ALJ." No. 06-2809, 2007 WL 1991574 at *1 n.1 (3d Cir. July 11, 2007).

These reprimands, spanning a period of seven years, indicate a serious pattern of unprofessional and offensive behavior. And now there is the present case and yet another before our panel, *Ortega v. Commissioner of Social Security*, No. 06-1647, submitted on June 26, 2007, in which Mr. Alter again impugns the work of an ALJ, saying it was "premeditatedly wrong" (Appellant's Br. at 25) and a "a parody of reality" (*id.* at 29). Viewing this steady stream of invective, and at the risk of some heat in our own language, we have concluded that the court can no longer tolerate the pollution of appellate practice that these repeated *ad hominem* attacks represent. Consequently, we refer Mr. Alter to the Court's Standing Committee on Attorney Discipline so that the Committee may make a recommendation to the Court as to whether Mr. Alter should be disciplined for his repeated violations of Local Rule 28.1(c), his consistent disregard of the many reprimands he has received for those violations, and for conduct unbecoming a member of the bar of this court. *See* Rule 4.2, <u>Third Circuit Rules of Attorney Disciplinary Enforcement</u>.